24-30494

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN FORD, former Officer John Doe Police Officer
Plaintiff - Appellant

v.

DERAY MCKESSON; BLACK LIVES MATTER; BLACK LIVES MATTER
NETWORK, INCORPORATED
Defendants - Appellees

Appeal From the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-742
Honorable Chief Judge Brian A. Jackson, Presiding

*APPELLANT JOHN FORD'S*
*ORIGINAL BRIEF*

Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
Dgrodner@grodnerlaw.com
Attorney for Appellant
JOHN FORD

JOHN FORD, former Officer John Doe Police Officer      NO. 24-30493
    (Appellant)         *

v.         *
        *

DERAY MCKESSON; BLACK LIVES MATTER; BLACK LIVES MATTER
NETWORK, INCORPORATED         *
    (Appellees)         *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record for the Claimant certifies that the following

listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

Judges of this Court may evaluate possible disqualification or refusal.

All persons with a financial interest in the outcome of this litigation are as

follows:

John Ford, Former Officer John Doe
Baton Rouge Police Department

DeRay McKesson
Counsel for DeRay McKesson,
William P. Gibbens
Schonekas, Evans, McGoey &
McEachin, LLC
909 Poydras Street, Ste 1600
New Orleans, La 70112
504.680.6050    fax    504.680.6041
billy@semmlaw.com

Black Lives Matter Network, Inc.
Counsel for Black Lives Matter
Network, Inc.
Chlore M Chetta

Barraso Usdin Kupperman, Freeman &
Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, La 70112
504.589.9731 fax 504.589.9701
cchetta@barrassousdin.com

May this certificate of interested parties be deemed proper in the premise.

<div style="margin-left: 50%;">

Respectfully submitted:
Counsel for Appellant
JOHN FORD

/s Donna Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
Dgrodner@grodnerlaw.com

</div>

# STATEMENT REGARDING ORAL ARGUMENT

Unnecessary. The review before this Court is *de novo* on the record.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES.............................. ii

STATEMENT REGARDING ORAL ARGUMENT........................ iv

TABLE OF AUTHORITIES.......................................... v

I.    STATEMENT OF JURISDICTION............................... 1
      A.   Subject Matter Jurisdiction.................................. 1
      B.   Appellate Jurisdiction..................................... 1

II.   STATEMENT OF ISSUES PRESENTED FOR APPELLATE REVIEW. . 1

III.  STATEMENT OF THE CASE.................................. 2
      A.   Nature of the Case......................................... 2
      B.   Background facts.......................................... 3
      C.   Pertinent facts............................................ 3
      D.   Procedural history........................................ 4
      E.   Rulings Presented for Review............................... 6
           1.   The *Partial Judgment* [ROA.1130] is presented for review along
                with its collateral rulings: *Order* and *Scheduling Order*
                disallowing any amendment [ROA.1128-1129 and ROA.1152-53,
                respectively]..................................... 6
           2.   The *Judgment* and *Ruling and Order* [ROA.1194 and ROA.1979-
                1993, respectively] granting summary judgment are presented for
                review.. .......................................... 6
      F.   Relief Requested.......................................... 6

IV.   SUMMARY OF ARGUMENT. ................................. 7

V.    ARGUMENT. ............................................. 7
      A.   Standard of Review........................................ 7
      B.   Trial Court applied the wrong standard on summary judgment...... 7
           1.   Credibility determinations improper. ................... 9
           2.   Evidence that may be offered on summary judgment. ...... 12
           3.   Nonmovant party receives inferences. .................. 18
      C.   Trial Court used a footnote to dismiss BLM from the litigation.... 19
      D.   Sufficient evidence offered by Officer Ford to overcome summary
           judgment.......................................... 23

    1)    "directing the protesters" "at all times.".. . . . . . . . . . . . . . . . 30

    2)    planned the protest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    3)    organized or staged the protest;. . . . . . . . . . . . . . . . . . . . . . 32

    4)    was in charge of the protest;. . . . . . . . . . . . . . . . . . . . . . . . . 32

    5)    was seen and heard giving orders throughout the day and night of the protest;. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    6)    was involved in or incited criminal conduct during the protest; . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    7)    ratified the actions taken during the protest.. . . . . . . . . . . . . 32

E.      Reconsideration of the 1st Amendment by the Trial Court is off the table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

FORM 6: CERTIFICATE OF COMPLIANCE WITH RULE 32 (a). . . . . . . . . . 39

# TABLE OF AUTHORITIES

## *Federal Cases*

Jones v. UPS Ground Freight, 683 F.3d 1283 (11th Cir. 2012). . . . . . . . . . . . . 17

Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422 (5th Cir. 2017). . . . . . . . . . . . . . 8

Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am., 272 F.3d 276 (5th Cir. 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . )31

Anderson v. Hutson, 114 F.4th 408 (5th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . 31

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). . . . 31

Austin v. Kroger Tex., L.P., 864 F.3d 326 (5th Cir. 2017).. . . . . . . . . . . . . . . . . . 9

Bigford v. Taylor, 896 F.2d 972 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 31

C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford, 453 F. App'x 439 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Century Sur. Co. v. Blevins, 799 F.3d 366 (5th Cir. 2015). . . . . . . . . . . . . . . . . 19

Counterman v. Colorado, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

Davoodi v. Austin Indep. Sch. Dist., 755 F.3d 307 (5th Cir. 2014). . . . . . . . . . . 19

Dean v. Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989).. . . . . . . . . . . . . . 10

Deville v. Marcantel, 567 F.3d 156 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . 9, 14

Doe v. Mckesson, 272 F. Supp. 3d 841 (M.D. La. 2017), aff'd in part, rev'd in part and

remanded, 922 F.3d 604 (5th Cir. 2019), opinion withdrawn and superseded on reh'g, 935 F.3d 253 (5th Cir. 2019), opinion withdrawn and superseded, 945 F.3d 818 (5th Cir. 2019), cert. granted, judgment vacated, 592 U.S. 1, 141 S. Ct. 48, 208 L. Ed. 2d 158 (2020), and aff'd in part, rev'd in part and remanded, 935 F.3d 253 (5th Cir. 2019), and opinion withdrawn and superseded, 945 F.3d 818 (5th Cir. 2019), and cert. granted, judgment vacated, 592 U.S. 1, 141 S. Ct. 48, 208 L. Ed. 2d 158 (2020), and aff'd in part, rev'd in part and remanded, 945 F.3d 818 (5th Cir. 2019), and cert. granted, judgment vacated, 592 U.S. 1, 141 S. Ct. 48, 208 L. Ed. 2d 158 (2020), and aff'd in part, rev'd in part and remanded, 71 F.4th 278 (5th Cir. 2023). . . . . . . . . 22

Doe v. Mckesson, 71 F.4th 278 (5th Cir. 2023), cert. denied, 144 S. Ct. 913, 218 L. Ed. 2d 442 (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 31

Flast v. Cohen, 392 U.S. 83, 88 S. Ct. 1942, 120 L. Ed. 2d 947 (1968). . . . . . . . 35

Ford Motor Co. v. Tex. Dep't of Trans., 264 F.3d 493 (5th Cir. 2001). . . . . . . . . 9

Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231 (3d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Garcia v. Orta, 47 F.4th 343 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Guzman v. Allstate Assurance Co., 18 F.4th 157 (5th Cir. 2021). . . . . . . . . . . 9, 14

Hardy v. Wood Grp. PSN, Inc., No. 13-775, 2014 WL 1664236(W.D. La. Apr. 25, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hines v. Pardue, 117 F.4th 769 (5th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . 24

Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532 (4th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re AKD Invs., 79 F.4th 487 (5th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . 31

In re Deepwater Horizon, 48 F.4th 378 (5th Cir. 2022). . . . . . . . . . . . . . . . . . . . . 9

In re L a. Crawfish Prods., 852 F.3d 456 (5th Cir. 2017). . . . . . . . . . . . . . . . . . . . 8

In re Whole Woman's Health, 142 S. Ct. 701, 211 L. Ed. 2d 581 (2022). . . . . . . 36

Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1991). . . . . . . . . . . . 14

Jack v. Evonik Corp., 79 F.4th 547 (5th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . 19

Jacquez v. Procunier, 801 F.2d 789 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . 19

Matter of Alabama & Dunlavy, Ltd., 983 F.3d 766 (5th Cir. 2020). . . . . . . . . . . 16

Maurer v. Indep. Town, 870 F.3d 380 (5th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . 16

McKesson v. City of Baton Rouge, 16-520 (M.D. La. 8/4/16). . . . . . . . . . . . . . . 11

Mills v. Davis Oil Co., 11 F.3d 1298 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 7

NAACP v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Nola Spice Designs, L.L.C. v. Haydel Enters., 783 F.3d 527 (5th Cir. 2015). . . . . 8

Parkman v. W&T Offshore, Inc., 544 F. Supp. 3d 642 (M.D. La. 2021). . . . . . . . 10

Rest. L. Ctr. v. United States Dep't of Lab., 115 F.4th 396 (5th Cir. 2024) . . . . . 26

Seigler v. Wal-Mart Stores Texas, L.L.C., 30 F.4th 472 (5th Cir. 2022). . . . . . . . . 9

Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sibbald v. United States, 12 Pet. 488, 9 L.Ed. 1167 (1838). . . . . . . . . . . . . . . . . . 36

Spiller v. Harris Cnty., Texas, 113 F.4th 573 (5th Cir. 2024). . . . . . . . . . . . . . . . . 25

Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60

(1995)........................................................ 20

Talon Mgmt. Servs., L.L.C. v. Goliath Asset Mgmt., L.L.C., No. 22-10379, 2022 WL 17901921 (5th Cir. Dec. 23, 2022)................................... 8

Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745 (5th Cir. 1985)..... 31

Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc., 951 F.3d 248 (5th Cir. 2020)....................................................... 15

United States v. Anderson, 93 F.4th 859 (5th Cir. 2024), cert. denied, No. 23-7537, 2024 WL 4426879 (U.S. Oct. 7, 2024)................................... 15

United States v. Henry, 849 F.2d 1534 (5th Cir. 1988)...................... 15

United States v. Layne, 43 F.3d 127 (5th Cir. 1995)....................... 14

United States v. Sneed, 63 F.3d 381 (5th Cir. 1995)....................... 14

United States v. Villasenor, 894 F.2d 1422 (5th Cir. 1990)................. 15

Von Derhaar v. Watson, 109 F.4th 817 (5th Cir. 2024)...................... 20

Walker v. Stroman, No. 20-50602, 2022 WL 2073834 (5th Cir. June 9, 2022).. 20

### Federal Rules and Statutes

1st Amendment, United States Constitution. ......................... 35-37

28 U.S.C. § 2106.............................................. 37

FRCP 12(b)(6)............................................. 20, 21

FRCP 56.............................................. 9, 11, 16, 17

### State Statutes and Codal Authority

La. R.S. 14:97.............................................. 31

### State Cases

Greene v. Lovisa, 16-660 (La. App. 5 Cir. 5/17/17), 221 So. 3d 270, writ denied, 2017-1017 (La. 10/9/17), 227 So. 3d 837............................... 13

### Other Authority

11 Moore's Federal Practice–Civil  (2017).............................. 17

C. Wright, Federal Courts 34 (1963)................................. 35

Mimi Clark Gronlund, Supreme Court Justice Tom C. Clark 189 (2010)....... 25

# I.   STATEMENT OF JURISDICTION

## A.   Subject Matter Jurisdiction

The jurisdiction of this Court lies under Article III of the United States Constitution and 28 USC § 1332, which provides this Court with subject matter jurisdiction over state law disputes between diverse parties where the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

## B.   Appellate Jurisdiction

The jurisdiction of this Court lies under Article III of the United States Constitution and 28 USC § 1291 from a final judgment that disposes of all parties' claims entered on July 10, 2024. [ROA.1994] On August 5, 2024, John Ford filed *Notice of Appeal*. [ROA.1997-1998]

# II.   STATEMENT OF ISSUES PRESENTED FOR APPELLATE REVIEW

1.   Whether the Trial Court erred in dismissing Black Lives Matter, Network, LLC, when the amended complaint naming the Network had not been filed, no opportunity to amend, there was no dismissal of the party (with or without) and all on the basis a footnote in the Fifth Circuit ruling. Legal error - *de novo* review.

2.   Whether the Trial Court applied the correct standard of review to the motion for summary judgment or whether the Trial Court made impermissible credibility determinations and refused to allow favorable inferences to the nonmoving party, where McKesson failed to offer his own affidavit or any of his own deposition testimony in support of his contentions.

3.   Whether the Trial Court erred in finding Officer Ford failed to offer evidence that 1) McKesson organized the protest; 2) breached his duty to Plaintiff; and 3) that the breach was cause-in-fact of injury. [ROA.1979 and ROA.1165]

4.   Whether the Trial Court erred in relying on a dissenting opinion from the SCOTUS to again address and reconsider the 1st Amendment issue

that was foreclosed by the Doe 2023 decision of this case, which decision is law-of-the-case.

## III. STATEMENT OF THE CASE

### A. Nature of the Case

This case arises out of a protest turned riot staged in Baton Rouge by Black Lives Matter through its leadership, DeRay McKesson, following the shooting death of Alton Sterling and police ambush in Dallas, Texas. McKesson organized the protest to take place on a public highway in front of the Baton Rouge Police Head Quarters blocking traffic to force a confrontation with police when he knew or should have known protester-police/police-protester violence would likely ensue.

The protest was yet another in a string of nationwide protests held by Black Lives Matter and led by DeRay McKesson to protest against police, while committing crimes including blocking public highways, assaulting police and bystanders, looting, and property destruction. Officer Ford was injured during the protest when the crowd turned violent throwing objects at the police attempting to arrest protesters blocking the highway.

Officer Ford testified that before the protest began, BRPD were warned of DeRay McKesson, a Black Lives Matter leader, and his involvement in violence at previous protests, and of the police shooting in Dallas, which had them on high alert. DeRay McKesson was present during the looting of water bottles, while water bottles were being thrown at police, and he was seen with a water bottle in his hand. As the leader and organizer, McKesson did nothing at this protest or previous protests to quell the violence.

At the time of Ford's serious injury, DeRay McKesson was on his way back to the BRPDHQ "we are walking back"[1] after having led protesters up Airline Hwy towards I-12 to block that highway, when BRPD blocked his access turning McKessons and his protesters around. McKesson, wearing trademark red shoes, was marching back towards the BRPD HQ in the lane of travel (live-streaming video to over a quarter of a million followers) when he was arrested. Near simultaneously, Officer Ford was struck in the face while making an arrest of another protester walking in the lane of travel near the BRPD HQ.

### B. Background facts

Black Lives Matter is a violent anti-police organization that has a long history of violent protests causing property destruction and personal injury as well as the force behind multiple police shootings that have been attributed to it. DeRay McKesson was the face of BLM who organized and orchestrated the Baton Rouge Protest in violation of law and incited others to violate the law triggering police use of force to arrest the violators. DeRay McKesson must be held liable for damages he has caused by inciting others to violence against police. "At this stage, the background facts are well known."[2] [ROA.1221-1247]

### C. Pertinent facts

The facts of this case have been recited in opinions of this Court of which writs

---

[1] First words spoken by DeRay McKesson in the video he live streamed to his twitter followers.

[2] Doe v. Mckesson, 71 F.4th 278, 282 (5th Cir. 2023), cert. denied, 144 S. Ct. 913, 218 L. Ed. 2d 442 (2024) (hereafter Doe 2023).

have now been denied. "According to Doe's complaint, Mckesson organized the protest such that he knew, or should have known, that violence would likely ensue. Doe says that Mckesson arranged for the protesters to meet in front of the Baton Rouge police station, blocking entry to the station and access to the adjacent streets. Mckesson directed the protest at all times, and when demonstrators looted a grocery store for water bottles to throw at the assembled police officers, he did nothing to try to discourage this, even though he remained in charge. After that, Mckesson personally attempted to lead protesters onto a local interstate to obstruct traffic, a crime under Louisiana law. To prevent the commission of that crime, the police responded and began making arrests. In that confrontation, the unidentified protester struck and injured Doe. All of this occurred, according to Doe, shortly after Mckesson had participated in protests across the country involving violence and property damage."[3]

Officer Ford submitted sufficient evidence and argument on that evidence to defeat summary judgment in this case. Officer Ford seeks a *de novo* review of the summary judgment granted in this case are found in the opposition brief and evidence offered as incorporated herein.  ROA.1221- 1247.

### D.    Procedural history

The procedural history of this case has been recited in an opinion of this Court of which writs were denied.  Doe 2023.

Following the June 16, 2023, judgment entered in the Fifth Circuit, on August

---

[3]  Doe 2023, 71 F.4th at 281–82.

1, 2023, the Trial Court held a telephone scheduling conference to set deadlines in the case and explained during that time that the case would be on a "rocket docket" to trial. Officer Ford was ordered to file an amended complaint and serve McKesson on or before August 15, 2023, and that the claims would limited to only the negligence claims against DeRay McKesson. Accordingly, an Order was entered instructing Officer Ford to file the amended complaint along with a Partial Judgment dismissing Black Lives Matter and Black Lives Matter Network, Inc., with prejudice. ROA.1128-1130. Two trial dates would be considered: one in each March and April 2024. Another status conference was set and the April date was entered for trial.

On August 25, 2023, the *Scheduling Order* was entered that precluded any amendments to the pleadings. ROA.1152.

On January 31, 2024, DeRay Mckesson filed *Defendant DeRay McKesson's Motion for Summary Judgment* on the basis that Officer Ford lacks proof that McKesson organized the protest, breached a duty to Officer Ford or that the breach of the duty was the cause-in-fact of Officer Ford's injuries. ROA.1165-1166.

Officer Ford opposed the motion with exhibits and manual attachments. ROA.1538-1942. Mr. DeRay McKesson submitted a reply. ROA.1943-1942.

Since the Supreme Court was still considering whether a writ may be granted, the trial date in April was continued. ROA.1957. On or about April 17, 2024, the Supreme Court denied writs. On July 10, 2024, the Trial Court issued *Ruling and Order* and final *Judgment* dismissing this case with prejudice. ROA.1979-1993 and ROA.1994.

On August 5, 2024, Officer Ford submitted his *Notice of Appeal* to this Court. ROA.1997-1998.

**E.**     **Rulings Presented for Review**

1.     The *Partial Judgment* [ROA.1130] is presented for review along with its collateral rulings: *Order* and *Scheduling Order* disallowing any amendment [ROA.1128-1129 and ROA.1152-53, respectively].

2.     The *Judgment* and *Ruling and Order* [ROA.1194 and ROA.1979-1993, respectively] granting summary judgment are presented for review.

**F.**     **Relief Requested**

This Court grant *de novo* review of the record in this matter and reverse and remand.

## IV.   SUMMARY OF ARGUMENT

This Court should review the summary judgment pleadings in this matter and find that the material issues of fact precluded summary judgment.   The summary judgment should be reversed.

Where Officer Ford has never had a chance to bring in the principle for whom or which DeRay McKesson was acting when he planned and led a protest on a public highway in front of the BRPDHQ where it was foreseeable the protesters would become violent and where McKesson knew or should have known that blocking a public highway would necessitate arrests and where Officer Ford was injured during the protest while making arrests as McKesson led protestors on the highway triggering his own arrest.

## V.   ARGUMENT

### A.   Standard of Review

We review a district court's grant of summary judgment *de novo*. Mills v. Davis Oil Co., 11 F.3d 1298, 1301 (5th Cir. 1994).

### B.   Trial Court applied the wrong standard on summary judgment

The holdings of the Fifth Circuit concerning liability are as follows:

First, Doe plausibly alleges that Mckesson "directed ... specific tortious activity" insofar as Doe contends "that his injuries were the result of Mckesson's own tortious conduct in directing an illegal and foreseeably violent protest." Mckesson, 945 F.3d at 829.[4]

\* \* \* \*

---

[4]   Referencing, Doe v. Mckesson, 945 F.3d 818 (5th Cir. 2019), cert. granted, judgment vacated, 592 U.S. 1, 141 S. Ct. 48, 208 L. Ed. 2d 158 (2020).

Second, he personally assumed control of the protest's movements, but failed to take any action whatsoever to prevent or dissuade his fellow demonstrators once they began to loot a grocery store and throw items at the assembled police. And third, Mckesson deliberately led the assembled protest onto a public highway, in violation of Louisiana criminal law. Plainly the State has a strong interest in preventing unreasonably dangerous conduct such as this. But neither does that standard unnecessarily sweep in expressive conduct. Protest leaders who organize their demonstrations with at least a minimal level of care will not be responsible for any actions taken by rogue participants.[5]

Officer Ford made a factual showing on all three of these elements. As such, his case should not have been dismissed on summary judgment

> "Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017) (internal quotation marks and citation omitted). Where the non-movant would have the burden at trial, the movant is required only to point to the absence of evidence, and then the burden at summary judgment shifts to the non-movant to raise a genuine dispute of material fact that warrants a trial. Nola Spice Designs, L.L.C. v. Haydel Enters., 783 F.3d 527, 536 (5th Cir. 2015). **A party has raised a "genuine dispute" if there is sufficient evidence that, if believed, would allow a jury to return a verdict for that party in a full trial on the merits.** In re L a. Crawfish Prods., 852 F.3d 456, 462 (5th Cir. 2017).[6] [Emphasis added]

Mr. John Ford seeks a *de novo* review of his summary judgment opposition brief, which he fully incorporated herein as though he repeated it *in extensio* and fully reiterated and repeated the entire opposition on the pages of this brief. ROA.1221-1248.

---

[5] Doe 2023, 71 F.4th at 283 and 292, respectively.

[6] Talon Mgmt. Servs., L.L.C. v. Goliath Asset Mgmt., L.L.C., No. 22-10379, 2022 WL 17901921, at *2 (5th Cir. Dec. 23, 2022).

## 1.    Credibility determinations improper

Credibility determinations are improper on summary judgment.[7]

"This court reviews *de novo* a district court's grant of summary judgment, applying the same standard as the district court." Austin v. Kroger Tex., L.P., 864 F.3d 326, 328 (5th Cir. 2017) (citing Ford Motor Co. v. Tex. Dep't of Trans., 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Austin, 864 F.3d at 328 (internal quotation marks and citation omitted). **On summary judgment, all facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings**.[8] [Emphasis added]

In a scathing review of Officer Ford's evidence, the Trial Court discounted the discovery responses, deposition, videos and other evidence as "simply no evidence" on the basis that the evidence offered was "self-serving,[9] uncorroborated, and

---

[7]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes, 398 U.S., at 158–159, 90 S.Ct., at 1608–1609." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

[8]  Seigler v. Wal-Mart Stores Texas, L.L.C., 30 F.4th 472, 476–77 (5th Cir. 2022), citing, Deville v. Marcantel, 567 F.3d 156, 163–64 (5th Cir. 2009).

[9]  "A party can present critical evidence, though, in many forms, even self-serving affidavits: " '[S]elf-serving' affidavits and depositions may create fact issues even if not supported by the rest of the record." Guzman v. Allstate Assurance Co., 18 F.4th 157, 160 (5th Cir. 2021). It is unremarkable that evidence submitted by one side at the summary judgment stage will be "self-serving"; the question is whether that self-serving evidence is "conclusory, vague, or not based on personal knowledge." Id. at 161." In re Deepwater Horizon, 48 F.4th 378, 382–83 (5th Cir. 2022).

9

inconsistent.[10]" ROA.1989. "'The fact that Plaintiff's affidavits may be self-serving does not gainsay (in this case) their unchallenged truth. A party's own testimony is often "self-serving," but [a court] do[es] not exclude it as incompetent for that reason alone." Instead, testimony based on personal knowledge and containing factual assertions suffices to create a fact issue, even if it is self-serving. In fact, "characterizing a party's testimony as 'self-serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'"[11]

"As the Fifth Circuit has noted, `[i]f all "self-serving" testimony were excluded from trials, they would be short indeed.[12]

---

[10] Of inconsistent testimony, the word "inconsistent" is mentioned but once in the *Ruling and Order*. [ROA.1989] The Trial Court did not point to Officer Ford's testimony here compared to there as being the inconsistent testimony to allow an explanation to show earlier testimony or other consistent deposition testimony. The Trial Court wrote "after first admitting that he 'didn't hear,'" Officer Ford testified he did hear. ROA.1985, citing to 96:6-14. Of the earlier testimony, at 38: 22 [ROA.1650], Ford explained, "No - - no personal conversation." Ford spoke of McKesson's racist slurs 38-40. [ROA.1650-1652] Ford continued to describe McKesson directing the crowd 41-43. [ROA.1653-1655] He also testified that others also told him McKesson was directing and agitating the crowd. 43-48. [ROA.1656-1661] When asked directly did anybody tell you McKesson was telling people to go out onto highway and block the road, Officer Ford answered, "Yes." 48:16-49:10. [ROA.1660-1661].

[11] Parkman v. W&T Offshore, Inc., 544 F. Supp. 3d 642, 650–51 (M.D. La. 2021), citing, Hardy v. Wood Grp. PSN, Inc., No. 13-775, 2014 WL 1664236, at *3 (W.D. La. Apr. 25, 2014) (quoting Dean v. Ford Motor Credit Co., 885 F.2d 300, 306 (5th Cir. 1989)).

[12] Parkman, 544 F.Supp.3d at 651, citing, C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford, 453 F. App'x 439, 443 (5th Cir. 2011).

The Trial Court erred in writing, "Notably, McKesson has repeatedly denied that he organized the Baton Rouge protest or led a protesters there." ROA.1980. The Trial wrote that McKesson said things he did not personally say. McKesson never offered his personal "denial" of any fact at issue. By writing that McKesson has "repeatedly denied that he organized the protest," the Trial Court cited to ROA.1167, which is McKesson's *statement of facts* offered by his attorney that cited - not to Mckesson's deposition, not to Mckesson's affidavit, or that of any person with him - but, to the deposition of Officer Ford. ROA.1180-1196.[13]

Thus, Mr. McKesson did not offer either his own deposition or his own affidavit or other basis for the Trial Court to write that McKesson has repeatedly denied the allegation.[14]

No where did Officer Ford testify that McKesson did not organize the protest. Officer Ford, instead, offered the testimony of McKesson, his own testimony along with a myriad of other pieces of evidence including McKesson's own video, McKesson's quoted statement given the next day to the press, and the lawsuit McKesson filed as a class representative of both the out-of-state and local protesters who were arrested for blocking a highway.[15]

---

[13] McKesson Exhibit List on msj. ROA.1197.

[14] McKesson entered a general denial in his answer for nearly every allegation of fact; however, the answer was not offered on summary judgment. ROA.1154-1161 *Defendant ReRay McKesson's Answer and Affirmative Defenses to Plaintiff John Ford's Amended Complaint*, ¶3-72. But see FRCP 56(c)(3) "The court need consider only the cited materials, but it may consider other materials in the record."

[15] See <u>McKesson v. City of Baton Rouge</u>, 16-520 (M.D. La. 8/4/16).

Similarly, the Trial Court also wrote that "Defendant stated he did not direct anyone to commit acts of violence at the protest." ROA.1985. Once again, McKesson never spoke these words; yet, the Trial Court labeled the assertion as "undisputed." ROA.1985. The Trial Court gave citation, once again, to McKesson's statement of fact that cited to Officer Ford's deposition. As such, there was no statement by McKesson and no evidence offered by McKesson to support the Trial Court's contention that McKesson stated he did not incite others to violence. Officer Ford's evidence stands unchallenged.

Here, the Trial Court gave credibility to statements, where none was due.

## 2. Evidence that may be offered on summary judgment

Although Mr. McKesson did not offer any of his own testimony or his own affidavit and only offered excerpts from Officer Ford's deposition, the Trial Court discounted Officer Ford's deposition testimony as self-serving, uncorroborated - when in all actuality, it was undisputed by any evidence offered by McKesson.

The same thing happenedd with the erroneous conclusions by the Trial Court that McKesson "did not engage in any act of violence at the protest." The Trial Court again cited to McKesson's *statement of fact*, citing to ROA.1167. Again, that rather than, use himself as a reference, McKesson cited to the Officer Ford deposition. McKesson never offered a "denial" of any fact at issue. Officer Ford offered the fact that protesters were throwing water bottles looted from Circle K; that McKesson was on the same corner when the protesters brought the pallet out and threw it on the ground; and McKesson was seen retrieving one of the water bottle from the looted

12

pallet.  McKesson testified he does not drink water while he is protesting and McKesson knew protesters were throwing the water bottles and other objects at police making lawful arrests of protestors blocking traffic.  ROA.1235-1238.  Officer Ford saw McKesson take one of the looted water bottles. ROA.1237-1238.  McKesson testified he does not drink water when protesting. Rather than being mere speculation, one logical conclusion a jury could draw is that McKesson also threw his water bottle.[16]  At ROA.1381, depo at 97, ln. 20  - 98, ln. 20, McKesson depo:

Q     Never had any bottled water in your hand?
A     No, because I didn't travel with water because I didn't want to have to go to the bathroom often.  So I don't recall ever actually in any other protest having -- traveling with water.
Q     So if you had a bottle of water you would not have drank the water, because you would not have wanted to have to use the restroom.  Is that correct?
A     I would not have carried water with me.

There was a pallet of water.  McKesson was seen retrieving a bottle of water from the pallet, which according to his own testimony for not for consumption.  That McKesson too threw his water bottle is not an unreasonable conclusion.  Where other protesters were throwing water bottles, even if as the Trial Court conclude McKesson must have given the bottle to another protestor, that protestor likely threw the bottle.  The bottom line is that weighing evidence and making credibility determinations is

---

[16]  "The crux of the court's reasoning here is that because Mr. Lovisa's testimony supports the inference that Ms. Greene traveled several car lengths prior to impact, the "only logical conclusion" is that she had entered the lane safely. That certainly is a logical conclusion, but upon our review of the record, we are not convinced it is the only logical conclusion.  Like Hebert and Lewis above, the evidence here includes conflicting testimony, resolution of which requires the evaluation of credibility." Greene v. Lovisa, 16-660 (La. App. 5 Cir. 5/17/17), 221 So. 3d 270, 278, writ denied, 2017-1017 (La. 10/9/17), 227 So. 3d 837.

improper on summary judgment.[17]   The nonmovant is entitled to evidentiary inferences.[18]

The Trial Court calls this sort of common-sensical inference "absurdly speculative;" [ROA.1984] yet, it is the only inference that logically follows.  Where McKesson testified he would not have carried a water bottle with him or drank water while protesting, the Trial Court erred in finding that reasonable inferences were that McKesson "put it in a pocket, or thrown it away in a trash can after drinking it." ROA.1984. The Trial Court's alternative inferences were not reasonable based upon the evidence.  Additionally, Photographs were offered into evidence of objects being thrown during the protest.  Officer Ford gave testimony that protesters on the same corner as McKesson were throwing water bottles and other objects at police who were making arrests and those in riot gear protecting the officers making the arrests.[19]

---

[17]   "Finally, courts may not "evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263 (5th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253–55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The sole question is whether a 'reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor.'" Guzman, 18 F.4th at 160.

[18]   "In doing so, we view the evidence in the light most favorable to the nonmovant and construe all reasonable inferences in her favor. E.g., Deville v. Marcantel, 567 F.3d 156, 163–64 (5th Cir. 2009)." Guzman, 18 F.4th at 160.

[19]   "In making this determination, a court should "accept all credibility choices that tend to support the jury's verdict," recognizing that the jury was "free to choose among all reasonable constructions of the evidence." United States v. Sneed, 63 F.3d 381, 385 (5th Cir. 1995) (citation omitted). We have explained that the jury has the "unique role" of judging the credibility of witnesses and deciding how much weight to give each witness's testimony. United States v. Layne, 43 F.3d 127, 130 (5th Cir. 1995) (citation omitted). "Generally speaking, '[w]hat a jury is permitted to infer from the evidence in a particular case is governed by a rule of reason, and juries may

Besides this act, McKesson was engaged in criminal conduct and baiting police at the time of his arrest. He was proving confrontation with police. McKesson testified he had a quarter of a million social media followers. McKesson testified he was live streaming his arrest. McKesson went to the ground or had to be taken to the ground to be arrested. During the live stream, the officer is heard saying, "Don't Fight me! Don't Fight me! Don't fight me!"

The Trial Court wrote that Officer Ford offered 38 exhibits, which the Trial Court complained should be inadmissible if each was not produced in discovery. ROA.1982, nt. 1. Rule 56 does not limit evidence offered on summary judgment to only those items produced during discovery.[20] Moreover, the discovery rules do not require the production of impeachment evidence and allow for discovery to be updated at any time. Moreover, the Trial Court did not write that it was refusing to admit any specific piece of evidence offered. There was no document specifically excluded.[21]

---

properly 'use their common sense' in evaluating that evidence.' " United States v. Villasenor, 894 F.2d 1422, 1425 (5th Cir. 1990) (quoting United States v. Henry, 849 F.2d 1534, 1536 (5th Cir. 1988))." United States v. Anderson, 93 F.4th 859, 865 (5th Cir. 2024), cert. denied, No. 23-7537, 2024 WL 4426879 (U.S. Oct. 7, 2024).

[20] The Trial Court found a "flagrant unwillingness to abide by the Federal Rules and the Court's Local Rule 56;" [ROA.1982, nt. 1] however, Office Ford submitted an opposing statement of material facts in the form required by the Local Rule 56. See ROA.1611.

[21] "Since a trial court can abuse its discretion by failing to explain the reasons for excluding evidence, the lack of a reasoned explanation weighs in favor of overturning the objections. See Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc., 951 F.3d 248, 268–69 (5th Cir. 2020). Courts also typically consider evidence unless the objecting party can show that it could not be reduced to an admissible form at trial.

Ex 35 is the Wikipedia article cited in Officer Doe's briefs in 2018. Exhibit 7 and 22 are the transcript and article of the McKesson interview with Wolfe Blitzer referenced in the Amended Complaint ¶ 9 and during McKesson depo at 101-102 [ROA.1744]. McKesson is speaking on a video, the audio of which was transcribed for publication. Ex 19 is the NY Times article quoting McKesson the morning after his arrest in Baton Rouge in the Amended Complaint ¶45 (McKesson admitted the quote in his deposition and there are videos of McKesson giving that and other statements the day after his arrest in Baton Rouge); Ex 20 discusses the disputes among McKesson and other leaders of BLM some of whom accompanied him to Baton Rouge. The content of the article was discussed with McKesson during his depo at 29 - 30 [ROA.1726]; Ex 21 is an article discussing officers being injured in St. Paul the contents of which were discussed with McKesson during his depo at 49, ln. 19- page 50, ln. 4 [ROA.1731] and listed in the Amended Complaint ¶22; Ex 23 is an article reporting and discussing the Baton Rouge Protest with photos; Ex 24 article discussing violence during BLM protest officers with Molotov cocktails and fireworks in Ferguson was discussed McKesson depo at 100 [ROA.1743] and in the Complaint ¶7; Ex 27 and 32 are articles about FBI classifying McKesson as a "treat actor" contents discussed during McKesson depo at 25-26 [ROA.1725]; Exs 28 and 29 are articles where DeRay McKesson after successful protest in Ferguson, Baltimore, McKinney followed by his going to Charleston Virginia where those

See Fed. R. Civ. P. 56(c)(2); Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017)." Matter of Alabama & Dunlavy, Ltd., 983 F.3d 766, 774 (5th Cir. 2020).

16

citizens started a hashtag "gohomederay" where he was asked to leave due to the violence; Ex 30 is an article with Gary Chambers remarks at Alton Sterling funeral discussed in deposition at 61-63, ln. 17 [ROA.1734]; Exs 31 and 34 are articles concerning the Dallas shooting the day before providing the who, what and when and multiple other BLM protests  during the same weekend turned violent contents of which were discussed in Depo at 107 [ROA.1745] and weekend of rage discussed in Amended Complaint ¶21; Ex 33 is an article form 12.28.15 showing that McKesson was already known in Baton Rouge as a leader of BLM well before he came to Baton Rouge in the wake of the Alton Sterling shooting.  There is no reason to exclude these pieces of evidence or the photos and drone footage that are readily authenticated.

McKesson made a vague unsupported objection in his reply brief to photographs and drone video, which at trial will be readily identifiable as taken during the Baton Rouge BLM protest turned riot.[22]  McKesson complained that

---

[22]  "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial." 11 Moore's Federal Practice–Civil ¶ 56.91 (2017); see also Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016) (holding that a "proponent need only 'explain the admissible form that is anticipated' " (quoting Fed. R. Civ. P. 56, advisory committee's note to 2010 amendment)); Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015) (recognizing that a "court may consider ... the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information ... into an admissible form.' " (alteration in original) (quoting 11 James Wm. Moore et al., Moore's Federal Practice–Civil ¶ 56.91[2] (3d ed. 2015))); Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (determining that a district court may consider a statement "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted))." Lee v. Offshore Logistical & Transp., L.L.C., 859 F.3d 353, 355 (5th Cir. 2017), as revised (July 5, 2017).

documents were not disclosed or listed in discovery responses, when many of the articles were either listed in the amended complaint, discussed with McKesson during his deposition or are articles of which McKesson gave an interview or is prominently featured. As to photographs and drone footage, same may be readily identified as taken during the protest turned riot. McKesson did not argue that the evidence can or cannot "be presented in a form that would be admissible at trial."

McKesson attached only one page from the discovery to show that Jude Wiedman was not listed. The discovery may readily be updated. McKesson did not produce the list of documents that were provided in discovery to support his assertion that some of the documents were not identified in discovery. ROA.1952. McKesson did not carry his burden of proof on his requirement of specific objections. The Trial Court did not make specific rulings on the admissibility of exhibits. Failing to support an objection with evidence is tantamount to not having made the objection. Rule 56 allows all exhibits to which there was no objection.

### 3.    Nonmovant party receives inferences

Later in the same ruling, the Trial Court in a blistering tirade described Officer Ford's evidence as uncorroborated, self-serving testimony; yet, the only evidence McKesson offered was the testimony of Officer Ford. As to cause-in-fact, the Trial Court wrote that self-serving, uncorroborated, inconsistent testimony is insufficient to show that McKesson led individuals on to Airline Highway. ROA.1989  It may hardly be disputed that Ford was injured on Airline Highway making arrests of protesters in the lane of travel on Airline at the near identical time that McKesson and

the protesters were marching on Airline Hwy in the lane of travel returning from their march to I-12. Credibility calls on summary judgment are improper.

Mr. Ford testified that he saw and heard McKesson giving orders to the crowd and to the specifics of what he heard. The testimony had a basis in personal knowledge and was not speculation or unsubstantiated assertions. Mr. Ford's testimony is evidence that creates a material issue of fact. Against the backdrop of McKesson leading and participating in protest after protest all over the country that turned violent more often than not resulting in injuries to police working the protests, a jury could well belief Mr. Ford's testimony that it happened yet again.

## C. Trial Court used a footnote to dismiss BLM from the litigation

The Trial Court denied the filing of the amended complaint that sought to name the Network on the basis of futility. That decision was affirmed on appeal in a footnote. On remand, the Trial Court erroneously treated the footnote as though it was an affirmation of a dismissal of the Network with prejudice. Officer John Ford was never given an opportunity to cure any deficiency in pleading a cause of action against the Network.[23]

The Trial Court forced Officer Ford to file an amended complaint, which

---

[23] "Normally, a plaintiff should be afforded at least one chance to remedy all identified flaws in his pleadings. That did not occur, so the dismissal with prejudice was error. Normally, a plaintiff should be afforded at least one chance to remedy all identified flaws in his pleadings. That did not occur, so the dismissal with prejudice was error." Jack v. Evonik Corp., 79 F.4th 547, 565 (5th Cir. 2023), citing, nt. 35, Century Sur. Co. v. Blevins, 799 F.3d 366, 372 (5th Cir. 2015) (citing Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986)); cf. Davoodi v. Austin Indep. Sch. Dist., 755 F.3d 307, 311 (5th Cir. 2014) (stressing the importance of providing notice and an opportunity to be heard to a plaintiff before dismissal).

limited the lawsuit to naming only McKesson as a defendant. ROA.1981. This took place pursuant to an *Order* and *Partial Judgment* for which Officer Ford seeks review. ROA.1128-1130.[24] The follow up order was the *Scheduling Order*, which closed all discovery to identify the proper BLM entity for which McKesson was acting. ROA.1152. Discovery in this case was stayed pursuant to a motion filed on February 3, 2017, [ROA.110-112] and granted on February 15, 2017. ROA.143-144. Thus, Officer Ford has never had an opportunity to investigate and bring the proper BLM entity into this lawsuit under the theory of *respondeat superior*.

After the Supreme Court's denial of the writ application, the Trial Court itself dismissed Black Lives Matter Network, Inc., _with prejudice_. ROA.1128-1129 and ROA.1130. The Trial Court wrote that the basis for dismissal of Black Lives Matter Network, Inc. [hereafter the Network], was the July 10, 2023 *Mandate* at 13 note 5. Thus, the Trial Court's dismissal with prejudice of the Network was a footnote.[25]

The original compliant sued BLM under the theories of negligence and

---

[24] "But `[a]n erroneous ruling on liability,' as Von Derhaar argues this was, 'may be reviewed effectively on appeal from final judgment.' <u>Swint v. Chambers Cnty. Comm'n</u>, 514 U.S. 35, 43, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)." <u>Von Derhaar v. Watson</u>, 109 F.4th 817, 825 (5th Cir. 2024).

[25] "Even where a party 'ha[s] not briefed [an] issue at all,' Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting' a motion to dismiss. <u>Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.</u>, 702 F.3d 794, 806 (5th Cir. 2012). Instead, "a court assesses the legal sufficiency of the complaint." Id. (citing Fed. R. Civ. P. 12(b)(6)). A district court thus abuses its discretion when it dismisses a complaint "as a penalty for [a plaintiff's] perceived failure to properly brief its opposition to" a motion to dismiss. Id. Accordingly, Walker's admittedly terse response to Reyna's motion to dismiss did not waive his Franks claim." <u>Walker v. Stroman</u>, No. 20-50602, 2022 WL 2073834, at *3 (5th Cir. June 9, 2022)

*respondeat superior.* ¶ 28-30. ROA.22-23. The *Amended Complaint* [ROA.387-403] sought to be filed [ROA.243 and ROA.378] named BLM, BLM Network, Inc., and #BlackLives Matter. ROA.392, under the theories of negligence and *respondeat superior*. ROA.392 at 15-16. As is now history, the Trial Court denied leave to amend, which was partially reversed on appeal.

Prior to ruling on the 12(b)(6) and motion to amend, [ROA.540-541] the Network filed a motion for an extension of time to answer. ROA.448. The basis for the Network's appearance was that Patrisse Cullors a co-founder of BLM had been served with the original complaint. ROA.448-449. The Magistrate found that the Network was not yet a party, but granted the motion. ROA.452-453. On August 7, 2017, the Network filed a motion to dismiss and to strike wherein it disclosed that it had been served with the original complaint naming BLM. ROA.512-525. A declaration was offered by Patrisse Cullors admitting to being the co-founder of Network along with two other individuals who had been named in the original complaint as co-founders of BLM, but denying any alliance with McKesson. ROA.527-528. Officer Ford opposed the motion. ROA.531-534.

The Trial Court's original ruling dismissing this case on a 12(b)(6) acknowledged that certain BLM entities were juridical entities with capacity to be sued, but found that no cause of action had been stated against either McKesson or any of the BLM entities. ROA.553-554: *Ruling and Order*, at 14-15. In Doe v. Mckesson, 71 F.4th 278, 286 (5th Cir. 2023), cert. denied, 144 S. Ct. 913, 218 L. Ed. 2d 442 (2024), at note 5, this Court wrote:

The district court denied Doe's motion for leave to add Black Lives Matter Network, Inc. and #BlackLivesMatter as defendants, holding that amendment would be futile. Specifically, the district court held that Doe failed to state plausible claims for relief as to Black Lives Matter Network, and that #BlackLivesMatter is an expression that lacks jural capacity. Mckesson, 272 F. Supp. 3d at 851, 853–54. Doe fails to brief these issues on appeal. They are therefore forfeited. See, e.g., Garcia v. Orta, 47 F.4th 343, 349 n.1 (5th Cir. 2022).

In his original appeal brief to this Court, Officer Ford assigned errors #3, #4, and #5 the Trial Court's finding Officer John Doe failed to state a cause of action against Black Lives Matter entities. The Network was not a party that was dismissed from the lawsuit either with or without prejudice. There is no ruling on the motion to dismiss filed by the Network. ROA.532. In Officer Ford's appellate brief, 17-30864 document 00514308438 filed on 1/16/18, at 8-9, he specifically assigned issues #3, #4, and #5 as to whether the Trial Court erred in finding Officer John Doe failed to state a cause of action against Black Lives Matter entities one of which was the Network. At 38-39, Officer John Doe specifically argued that a cause of action had been stated against the Network where it "appear[s] to own Black Lives Matter," citing the *respondeat superior* statute.

The Trial Court denied the motion to amend. As such, the Trial Court's ruling may not legally act as a dismissal of Black Lives Matter Network with or without prejudice, because the Network had not yet been joined. Moreover, once a party *is before the court* after proper service, a dismissal of that party on a no cause of action is not with prejudice, especially, where no opportunity to amend was had. Where the Network made an appearance, but was not a named party to the proceeding, the Trial Court erred in *sua sponte* issuing the dismissal with prejudice of the Network based

on a foot note.

The Trial Court erred in dismissed the Network with prejudice and by refusing to allow any discovery on the issue of the proper party to name as the BLM principle.

### D. Sufficient evidence offered by Officer Ford to overcome summary judgment

McKesson organized the protest and only met with some locals the night before the protest. ROA.1983, ¶1. The Trial Court wrote, Officer Ford "did not 'hear' Defendant giving any orders during the protest, although he heard Defendant '[tell protesters] to come out into the road.'" Officer Ford saw McKesson leading the crowd and heard McKesson giving orders. ROA.1241. Trial Court wrote that the video showed the McKesson, who admitted to walking in the street "in no way blocks traffic." The audio from the video is replete with car horns blaring and the blocked traffic is shown on the video. The very first words that McKesson speaks is that his group was in the process of "walking back" and that "Police are literally right behind us." McKesson makes repetitive reference to the police lights being right behind him.

This video supports the testimony of McKesson that his arrest occurred after he led a group down Airline attempting to gain entry to the I-12 Hwy overpass. The BRPD blocked the group and was able to turned them around and force them to march back towards the BRPD. BRPD officers are heard repeatedly warning McKesson to stay out of the lane of travel. Cars are shown trying to travel and car horns are continually blaring. McKesson said, "We are walking back." If the police are "literally directly behind us," as Deray said, then DeRay is now at the end of the group. He is at the end, because before being turned around to walk back, he was at

23

the beginning of the group leading the protesters to I-12.[26] The video jerks wildly as DeRay McKesson resists his arrest and is told repeatedly, "Don't fight me!, Don't fight me!, Don't fight me!," McKesson struggling as he is taken to the ground.

The Trial Court found that McKesson's video did not show McKesson engaging in violence or giving orders to anyone. ROA.1983. The video audio clearly demonstrates BRPD officers commanding McKesson "loud shoes" to stay out of the road. McKesson is then giving orders to his subordinates to call certain attorneys. The Trial Court wrote that McKesson appeared to be walking in the middle of the protest rather than at the head of it. ROA.1983 Actually, the video shows McKesson at a time when he was now at the end of the protest walking back to the police station after being turned around from entering 1-12.

Before his arrest, McKesson testified he was marching down Airline Hwy on his way to the I-12 overpass to mount that highway to block traffic on the I-12 as he and the BLM protesters had done in multiple other cities. The BRPD blocked, stopped and turned McKesson and the protester he was leading around. McKesson and his group, who were leading the protestors to I-12 were now at the back of the group as they marched back towards the Baton Rouge Police Station on Airline Hwy to continue the protest at Police Headquarters. It was at this point, while live streaming, that McKesson was baiting his arrest. McKesson was now following the crowd of protestors. The Trial Court erred in finding the video showed McKesson

---

[26] Although a fact finder may not rely upon "mere speculation or conjecture," a fact finder may rely on "common sense." <u>Hines v. Pardue</u>, 117 F.4th 769, 780 (5th Cir. 2024).

marking in the middle of the group.[27]

The Trial Court then concludes that as a matter of fact McKesson did not organize or lead the protest. ROA.1984. Material issues of fact defeated summary judgment on this issue.

The Trial Court also found that McKesson issued only a "single re-tweet," which was "his only connection between Defendant and the organization and leadership of the protest." ROA.1984. McKesson never said his re-tweet was a "single re-tweet." McKesson said he amplified and re-tweeted. ROA.1735: McKesson at 66:13/24:

Q    Now you said somebody contacted your team. You recall that?
A    Yes.
Q    What did you do after your team was contacted?
A    Went to Baton Rouge.
Q    Okay, because in your answers to discovery you said that you notified others of the protest.
A.    Oh, Twitter. I amplified a message on Twitter about it.
Q    What did you say?
A    I amplified a message, so I re-tweeted a message.

At the time, McKesson had over a quarter of a million followers. ROA.1735-1736: McKesson, at 71:10-72:17. McKesson at 67:1-14. So, even if McKesson issued only a "single" re-tweet, which finding was unsupported by the evidence, the tweet had the capacity to reach over 225,000 persons who could also re-tweet. On this fact, the Trial Court took sides and gave an inference to evidence, which inference was not

---

[27] Spiller v. Harris Cnty., Texas, 113 F.4th 573, 581 (5th Cir. 2024) ("As former Supreme Court Justice Tom C. Clark once remarked, "You see, we don't have an army to enforce our opinions, and we don't have any money ... to run an ad in the newspaper. The only way we have is logic and the force and common sense of the opinion." Mimi Clark Gronlund, Supreme Court Justice Tom C. Clark 189 (2010)."

suggested by either party. Neither party represented that McKesson re-tweet was a "single" re-tweet. McKesson was re-tweeting inferring he was going to Baton Rouge. If he did not want his followers to join him, then why announce the BR protest.[28]

The Trial Court then went into an analysis of whether Officer Ford provided that DeRay McKesson engage in any acts of violence at the protest, [ROA.1984] when as shown on his very own video McKesson, with his red shoes, was walking in the road way to trigger an altercation and arrest by police after being directly order to stay out of the roadway. Mr. McKesson was fully engaging in an act of violence by forcing police to arrest not only him, but his many out of state followers. ROA.1984. DeRay McKesson stated that a fact material to the granting of summary judgment was a showing that he engaged in or directed others to engage in an act of violence in Baton Rouge. See ROA.1167-1168. The material fact was whether McKesson designed and orchestrated the protest to be in violation of law to entice police into altercations and arrests was shown by Mr. Ford. No court has found that to prevail, Officer Ford must show McKesson to have himself engaged in violence in Baton Rouge.

The Trial Court wrote that Officer Ford did not respond to the undisputed assertion that McKesson "did not direct anyone to commit act of violence at the protest." ROA.1985. As a matter of fact, Officer Ford property traversed ¶3 of

---

[28] Rest. L. Ctr. v. United States Dep't of Lab., 115 F.4th 396, 406 (5th Cir. 2024) ("The dual jobs regulation—and common sense—tells us that the waitress is 100 percent engaged in the single tipped occupation of waitressing—she is not 60 percent a waitress, 10 percent a janitor, 10 percent a baker, 10 percent a barrista [sic], and 10 percent a dishwasher.").

McKesson's statement of facts and directed the Trial Court to Sections III and IV of his brief. ROA. 1611. Here, Officer Ford offered evidence of the historical violence at the protests attended and staged by McKesson. Here, the day before several police were shot in cold blood for working a BLM protest in Dallas. Here, McKesson organized a protest to be in front of the BRPD blocking a public highway.[29] Here, protesters were clearly throwing objects at police in McKesson's presence and he did nothing to stop them. Ford testified, ROA.1696: at 84, lns. 5:19:

A. I was probably about 20 feet from him and he was probably about 10 or 15 feet from the cases of water.
Q. Did you ever hear him order the crowd to stop throwing those water bottles?
A. No, ma'am.
Q. Did you ever hear him at any time or see him or get the idea that he was trying to tamp things down, calm things down, encourage people to stop violating the law?
A. No, ma'am.
Q. Did you ever see him at any time try to encourage people to stop throwing objects at police?
A. No, ma'am.

Here, BRPD, anticipating the violence, appeared in full riot gear. Here, protesters looted a Circle K and were throwing objects at police. Officer Ford witnessed McKesson leading the protesters [ROA.1654]:

A. Well, they were following him all over the area. I mean, anywhere he was going, they were following with him. And when he walked up to the New Black Panther Party, you know, a crowd walked with him to them, and they stopped and conversed for -- and, like I said, I don't know what he said, it was too loud, you know, too much noise, but after a short little time that they stood there is when they all walked out into the highway.

The Trial Court wrote that Mr. Ford's response "does raise a dispute of sorts:

---

[29] ROA.1736: AI believe I re-tweeted something that had the time and the place. Yes. Q     To your Twitter followers. Correct? A      Correct.

Plaintiff testified that Defendant 'led [protesters] a couple of times out into the road."
The Trial Court then mistakenly wrote that Mr. Ford first testified he "didn't hear"
McKesson give any order's personally, when in fact Ford testified he saw McKesson
leading the crowd. The Trial Court then acknowledged the testimony of Mr. Ford
that he "personally heard" Defendant tell people to come into the road. The Trial
Court then erroneously wrote, "While this may be a disputed issued of fact, it is not
material for summary judgment." ROA.1985.[30] The Trial Court was in error where
the issue on summary judgment was whether McKesson was inciting others to violate
the law. It is for a jury to decide whether McKesson was encouraging protesters into
the road both before and during the protest was sufficient to hold McKesson liable
in negligence for Officer Ford's injuries inflicted upon him in the course of his police
duties to keep the highway clear. ROA.1985.

By leading demonstrators onto the public highway and provoking a violent
confrontation with the police, McKesson's negligence actions were the "but for"
cause of Mr. Ford's injuries. Mr. Ford would not have been making arrests "but for"
the illegal conduct orchestrated by McKesson.

The Trial Court wrote that it had allowed "open and extensive discvoery,"
when as shown by the *Scheduling Order* in this case [ ROA.1152-1153] the case,
which had been stayed since its inception was allowed only a few short months for

---

[30] But see, "Doe seeks to hold Mckesson liable for the latter's personally conducted
tortious actions: negligently organizing and directing a protest in an unsafe manner,
such that it was reasonably foreseeable for the police to respond, and violence to
ensue." Doe 2023, 71 F.4th at 284.

discovery. Once the case was remanded, the Trial Court advised the case would be on a "rocket docket," which was a term he explained came from another judge in another jurisdiction. Following a conference, on August 25, 2023, the Trial Court issued an order requiring that all fact discovery be competed by December 31, 2023, which allowed a mere four months over both Christmas and Thanksgiving holidays, to find witness and evidence on a cold case to have the case ready for trial on a short order. ROA.1152-1153. Thus, the Trial Court's statement that discovery had been "open and extensive," does not necessarily follow. ROA.1988.

The Trial Court found that Officer Ford offered no evidence that McKesson was a leader of BLM (a fact to which he readily admitted and which is supported by articles in national publications proclaiming him so); that he organized the protest (he tweeted the specifics of the Baton Rouge protest to over a quarter of a million followers, told him he was there and where and live streamed his violations of law during his protest); he led the protestors onto the highway (he admitted he was on Airline Hwy walking toward I-12 to block that highway when he was turned around by police - he was videoed in his red shoes walking in the lane of traffic); McKesson saw the protestors throwing objects at police (he denied this); saw the property destruction (he admitted he saw the property destruction); did nothing to stop the attacks on police (led protestors towards I-12 where he was turned around, while violating the law by intentionally walking on the public highway), staged his own arrest while live streaming to his quarter of a million followers, at the same time that brave Officer Ford was making arrest of protestors violating the law by blocking a

public highway.

Below is the list of facts the Trial Court wrote Officer Ford failed to show with citations to the Ford msj opposition to show he did make the showings.

**1)    "directing the protesters" "at all times."**;

Officer Ford testified that before McKesson even arrived his team was briefed, prepared and advised that McKesson would be there and he was the leader.  Officer Ford testified he was not watching McKesson at all times, but during the time he was, McKesson was the leader and he was directing person on to the highway and leading chants.  The Trial Court acknowledged that Officer Ford "may have" made a showing that McKesson was ordering protestors into the highway. The Trial Court wrote, " heard Defendant '[tell protesters] to come out into the road." [ROA.1983]; "may have encouraged some protesters into the roadways" [ROA.1985]; "leading some individuals on to the highway at some point" [ROA.1989]; " possible directing of some protestors on to the road" [ROA.1991].  Mr. McKesson candidly admitted that he was arrested while marching back towards BRPD HQ after having marched toward I-12 with the goal of continuing the protest on I-12. Officer Ford testified that there were warnings over the bull horn that blocking a public highway is a crime.  Officer Ford was injured while having to make arrests of protestors in the lane of travel at the near identical time that McKesson was arrested marching in the lane of travel.

> Encouraging protestors into the road is inciting a violation of law that triggers police interaction, confrontation and arrests.  Doe has plainly alleged that he suffered an injury. He has also plausibly alleged that Mckesson breached his duty in the course of the latter's organizing and leading the Black Lives Matter protest at issue here. First and foremost, Doe alleged that Mckesson planned to lead the demonstrators

30

onto Interstate 12, despite the fact that blocking a public highway is a crime under Louisiana law. La. Stat. Ann. § 14:97. As we explained before, that act supports the contention that Mckesson breached his duty of care as to Doe:

> It was patently foreseeable that the Baton Rouge police would be required to respond to the demonstration by clearing the highway and, when necessary, making arrests. Given the intentional lawlessness of this aspect of the demonstration, Mckesson should have known that leading the demonstrators onto a busy highway was likely to provoke a confrontation between police and the mass of demonstrators, yet he ignored the foreseeable danger to officers, bystanders, and demonstrators, and notwithstanding, did so anyway. Doe 2023, 71 F.4th at 288.

Notwithstanding the judgment of this Court, the Trial Court concluded "it is not material for summary judgment" that McKesson was ordering protestors to violate the law. ROA.1985 The holding of the Fifth Circuit in this case is that "by leading the demonstrators onto the public highway and provoking a violent confrontation with police, McKesson's negligent actions were the `but for' causes of Officer Doe's injuries." Doe v. McKesson 2023, 71 F.4th at 289.[31] The Trial Court may not at this impart in this litigation simply ignore the hard work of this and other courts (La. S.Ct.; SOCTUS) in reaching the decisions now binding on the Trial Court.

---

[31] Anderson v. Hutson, 114 F.4th 408, 416–17 (5th Cir. 2024)("The law of the case doctrine 'generally prevents reexamination of issues of law or fact decided on appeal 'either by the district court on remand or by the appellate court itself on a subsequent appeal.' " Bigford v. Taylor, 896 F.2d 972, 974 (5th Cir. 1990) (quoting Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745, 750 (5th Cir. 1985); see Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). However, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication. ' " In re AKD Invs., 79 F.4th 487, 491 (5th Cir. 2023) (quoting Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am., 272 F.3d 276, 279 (5th Cir. 2001)).

**2)** **planned the protest**;

McKesson participated in hundreds of protests in City Streets. See ROA.1224-1225.

McKesson was aware that prior BLM protests were violent ROA.1225-1226

McKesson was a well known distinguished leader of BLM. BOA.1226-1227

**3)** **organized or staged the protest**;

McKesson organized and led the protest. ROA.1227-1229

**4)** **was in charge of the protest**;

McKesson organized and led the protest. ROA.1227-1229 and ROA.1236-1237; ROA.1241.

**5)** **was seen and heard giving orders throughout the day and night of the protest;**

McKesson ordered protestors on to the highway ROA.1229-1238

**6)** **was involved in or incited criminal conduct during the protest;**

McKesson threw a water bottle. ROA.1283

McKesson leading protestors to and from I-12 when arrest occurred and Officer Ford's injures. ROA.1238-1244

Conduct cause in fact. ROA.1244-1245

**7)** **ratified the actions taken during the protest**.

DeRay McKesson had sufficient control that he could have stopped the crowd, but he did not. ROA.1241

The Trial Court erred in finding Officer Ford had no evidence to support his case. Additionally, the Trial Court erroneously found that McKesson, as a protest

32

organizer, owed no duty to the Plaintiff. This finding is inconsistent with the prior holdings in this case by both this Court and the Louisiana Supreme Court.

As to cause-in-fact, the Trial Court wrote that self-serving, uncorroborated, inconsistent testimony is insufficient to show that McKesson led individuals on to Airline Highway. ROA.1989 Credibility calls on summary judgment are improper.

Officer Ford testified to what he saw and heard, which is not speculation or an unsubstantiated assertion. Officer Ford's testimony is evidence that creates a material issue of fact. Against the backdrop of McKesson leading protest after protest all over the country that turned violent or resulted in injuries to police working the protests, a jury could well believe Mr. Ford's testimony that it happened, yet, again.

The Trial Court discounts the evidence that the Baton Rouge protest was violent and that objects were being thrown at police all day long and McKesson stood by and did nothing to calm the crowd. ROA.1989. The Trial Court wholly ignores the fact that McKesson was the face of Black Lives Matter and seeks to divorce McKesson from his association with Black Lives Matter.

The Trial Court wrote that regarding McKesson's "leadership," which McKesson admitted to his leadership role with BLM, being reduced in discovery. Although the Trial Court wishes to brush aside the fact, it is not in dispute that McKesson was a leader of BLM. Neither party has claimed that McKesson was not a well known leader of BLM.

The Trial Court wrote that it "will not extend liability to McKesson for the minor, disputed role that he played." ROA.1990. The Trial Court reduces McKesson

role to one of a protest participant. ROA.1991. The Trial Court's findingsis one of fact finding and usurping the role of a jury. McKesson was the one in the newspaper the next day speaking out for the protestors and he was the lead plaintiff in the class action filed on behalf of the protestors. He was not a mere participant.

The Trial Court disputes the McKesson had a duty at law. ROA.1990. However, on summary judgment, McKesson did not dispute that he owed a duty. The Trial Court, notwithstanding, examines whether McKesson would owe a duty under the facts of this case and makes a statement of policy, that allowing a duty in this case would represent "a major expansion of tort liability unsupported by precedent . . . " ROA.1990. There is precedent - in this case - the Louisiana Supreme Court and this Court have already answered - instructing that a protest leader under the facts of this case does owe a duty an officer injured in the line of duty. ROA.1223 § II. The Trial Court may not at this late point in this litigation second guess the policy considerations resulting in the ruling of this Court and the Louisiana Supreme Court. The duty question is off the table. The Trial Court was not free at this point to revisit the duty question. ROA.1990.

As to the breach of duty, that aspect of this case was briefed at ROA.1223- and 1238-1244 § III (A) and (G).

### E.    Reconsideration of the 1st Amendment by the Trial Court is off the table

We also rejected Mckesson's argument that the First Amendment forbids a State from imposing liability in these circumstances. Here, the negligence theory of which Doe seeks to avail himself is tailored to prohibiting unlawful conduct and does not restrict otherwise legitimate

34

expressive activity.[32]

Once again dismissing this case, the Trial Court further found that based on 1st Amendment, this case should be dismissed citing the dissent published by Justice Sotomayor. ROA.1981. Whether the 1st Amendment bars this case, should not be reconsidered.

A "statement"[33] issued by a single Justice is not a statement issued by the Supreme Court, itself.[34] The Trial Court itself recognized the "statement" to be a dissenting opinion. ROA.1981. Justice Sotomayor was not writing for the Supreme Court. Her "statement" was not a *per curiam* issued on behalf of the Court. Justice Sotomayor's statement is a dissenting opinion from a singular judge, who could not obtain a second or third justice to join her in her dissenting opinion.[35]

---

[32] Doe v. Mckesson, 71 F.4th 278, 282 (5th Cir. 2023), cert. denied, 144 S. Ct. 913, 218 L. Ed. 2d 442 (2024).

[33] "And it is quite clear that 'the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.' C. Wright, Federal Courts 34 (1963)." Flast v. Cohen, 392 U.S. 83, 96, 88 S. Ct. 1942, 1950, 20 L. Ed. 2d 947 (1968). The "statement" is either an advisory opinion or a dissent from the Court's refusal to grant a writ in this case. Either way, the "statement" has no precedential value in this case.

[34] Writing, "[T]he Supreme Court expects a 'full and fair consideration' of Counterman 'in any future proceedings in this case.'" ROA.1967, at 2, ¶ 1. McKesson's representation is a gross and flagrant misrepresentation of a single statement issued by a solo justice. The "statement" was not sanctioned by and it does not bear the weight of the Supreme Court.

[35] The Supreme Court denied writs, "A dissenting opinion does not create binding precedent nor does it become a part of case law, though they can sometimes be cited as a form of persuasive authority in subsequent cases when arguing that the court's holding should be limited or overturned." https://en.wikipedia.org/wiki/Dissenting_opinion

The Fifth Circuit has twice ruled that First Amendment protections do not apply to this case,[36] which ruling is law-of-the-case[37] and binding.[38]

Of Counterman,[39] that case was on the books when the Supreme Court denied writs in this case.[40]  Had the Supreme Court wanted this case to be reviewed under

---

[36]  We also rejected Mckesson's argument that imposing liability in these circumstances would violate the First Amendment, as informed by NAACP v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). That case gave important guidance on the extent to which state law can impose liability for conduct in "the presence of activity protected by the First Amendment." Id. at 916, 102 S.Ct. 3409. Under Claiborne, where a defendant "authorized, directed, or ratified specific tortious activity," the First Amendment allows state law to impose liability for "the consequences of that activity." Id. at 927, 102 S.Ct. 3409. That principle, we explained, is consistent with allowing civil liability here." Doe 2023, 71 F.4th at 284.

[37]  Occidental Petroleum Corp. v. Wells Fargo Bank, N.A., 117 F.4th 628, 647–48 (5th Cir. 2024) ("This doctrine, among other things, precludes a district court from reconsidering an issue of fact or law decided on appeal. See United States v. Bazemore, 839 F.3d 379, 385 (5th Cir. 2016) (per curiam). Vacating the relevant orders and remanding the case would allow the district court to address the remaining issues with the parties and guide the case towards resolution on the merits.3 But once the mandate issues, that will be the first instance in which advantage and detriment will inure to either party.").

[38]  "'Whatever was before the Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.' Sibbald v. United States, 12 Pet. 488, 492, 9 L.Ed. 1167 (1838)." In re Whole Woman's Health, 142 S. Ct. 701, 702, 211 L. Ed. 2d 581 (2022).

[39]  Counterman v. Colorado, 600 U.S. 66 (2023)(recklessness is the appropriate mens rea, consistent with the First Amendment, for a criminal conviction for communications constituting a true threat.).

[40]  Sotomayer's agenda through her statement issued in this case is unclear where she wrote separately in Counterman because she could not fully agree with the majority opinion in Counterman, writing, "Today, unfortunately, the Court unnecessarily departs from this traditional understanding. That is not to say that I

---

Counterman,[41] the Supreme Court would have remanded this case to the Fifth Circuit Court of Appeal to reconsider its ruling in view of Counterman, which, as we well know, writs were denied.

Moreover through DeRay McKesson's reply brief in a footnote to the Supreme Court, he wrote that reconsideration under Counterman would not help him, writing:

> One amicus suggests that the Court vacate and remand in light of Counterman. FIRE Amicus Br. 3. But "such further proceedings," are neither needed nor "just under the circumstances." 28 U.S.C. § 2106. The passages in Counterman that cast light on the Fifth Circuit's errors were restatements of the same long-settled principles petitioner pressed below, and petitioner—having weathered one "prolong[ed]" and "expens[ive]," 592 U.S. at 5, round of remand proceedings, culminating in a decision no more faithful to Claiborne than its precursors—should not have to pursue yet another in order to vindicate his First Amendment rights.

A "statement" by a single Justice carries no meaningful weight. Justice Sotomayor is suggesting that, as the case continues in the lower courts, the defendant may want to argue that the newer SCOTUS decision (Counterman v. Colorado) may have somehow change the relevant First Amendment test. Lower courts must ignore Justice Sotomayor's "statement." Presently, the law of the case, is the Fifth Circuit ruling that the First Amendment protections do not apply in this case. Reconsideration is impermissible.

---

disagree with the Court on everything." Counterman v. Colorado, 600 U.S. 66, 84, 143 S. Ct. 2106, 2120, 216 L. Ed. 2d 775 (2023).

[41] Colorado charged Counterman under a statute making it unlawful to "[r]epeatedly ... make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." Colo. Rev. Stat. § 18–3–602(1)(c) (2022).

## CONCLUSION

This Court should reverse and remand.

<div style="text-align: right">

Respectfully submitted:
Counsel for Appellant
JOHN FORD
/sDonna Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
Dgrodner@grodnerlaw.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing in electronic portable document format has been both emailed pursuant to Rule 25.2.3 and 25.2.5 on the Court's electronic Notice of Docketing Activity this October 28, 2024.

<div style="text-align: right">

/sDonna U. Grodner
Donna U. Grodner

</div>

Counsel for DeRay McKesson,
William P. Gibbens
Schonekas, Evans, McGoey & McEachin, LLC
909 Poydras Street, Ste 1600
New Orleans, La 70112
504.680.6050 fax 504.680.6041 billy@semmlaw.com

Counsel for Black Lives Matter Network, Inc.
Chloe M. Chetta cchetta@barrassousdin.com
Barraso Usdin Kupperman, Freeman & Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, La 70112
504.589.9731 fax 504.589.9701

## FORM 6: CERTIFICATE OF COMPLIANCE WITH RULE 32 (a)

1.  This brief complies with the type-volume limitation of Fed.R. App. P. 32 (a)(7)(B) because this brief contains 11,518 words excluding the parts of the brief exempted by Fed. R. App. 32 (f) of 13,000 words or 1,300 lines of text.

2.  This brief complies with the typeface requirement of Fed.R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Word Perfect in a scaleable 14 pt. font called Times New Roman.

Baton Rouge, Louisiana, on October 28, 2024.

/s<u>Donna Grodner</u>
Donna U. Grodner