24-30494

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN FORD, former Officer John Doe Police Officer
Plaintiff - Appellant

v.

DERAY MCKESSON; BLACK LIVES MATTER; BLACK LIVES MATTER
NETWORK, INCORPORATED
Defendants - Appellees

Appeal From the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-742
Honorable Chief Judge Brian A. Jackson, Presiding

## *APPELLANT JOHN FORD'S*
*REPLY BRIEF*

Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
Dgrodner@grodnerlaw.com
Attorney for Appellant
JOHN FORD

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      REPLY BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FORM 6: CERTIFICATE OF COMPLIANCE WITH RULE 32 (a). . . . . . . . . 23

# TABLE OF AUTHORITIES

## *Federal Cases*

Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225 (5th Cir.2010). . . . . . 3
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Art Midwest Inc. v. Atl. Ltd. P'ship XII, 742 F.3d 206 (5th Cir. 2014). . . . . . . . . . 3
Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, L.L.C.), 564 F.3d 353 (5th Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . 3
Cook v. Rockwell Int'l Corp., 618 F.3d 1127 (10th Cir.2010). . . . . . . . . . . . . . . . 3
Council 31, Am. Fed'n of State, Cnty. & Mun. Employees, AFL–CIO v. Ward, 978 F.2d 373 (7th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Counterman v. Colorado, 600 U.S. 66, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5-7, 11
Doe v. Mckesson, 2 F.4th 502, 504 (5th Cir.), certified question accepted, 2021-00929 (La. 7/8/21), 320 So. 3d 416, and certified question answered, 2021-00929 (La. 3/25/22), 339 So. 3d 524. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Doe v. Mckesson, 71 F.4th 278 (5th Cir. 2023), cert. denied, 144 S. Ct. 913, 218 L. Ed. 2d 442 (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 9, 10, 12, 14
Doe v. Mckesson, 945 F.3d 818, 826 (5th Cir. 2019), cert. granted, judgment vacated, 592 U.S. 1, 141 S. Ct. 48, 208 L. Ed. 2d 158 (2020). . . . . . . . . . . . . . . . 6, 11, 14
El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Greenlaw v. United States, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Hall v. UiPath, Inc., 123 F.4th 419 (5th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . 18

Hankins v. Wheeler, <u>109 F.4th 839</u> (5th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . 18

Harte-Hanks Communications, Inc. v. Connaughton, <u>491 U.S. 657</u>, <u>109 S.Ct. 2678</u>, <u>105 L.Ed.2d 562</u> (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Mckesson v. Doe</u>, <u>592 U.S. 1</u>, <u>141 S. Ct. 48</u>, <u>208 L.Ed.2d 158</u> (2020). . . . . . . . . 13

<u>Morley Constr. Co. v. Md. Cas. Co.</u>, <u>300 U.S. 185</u>, <u>57 S.Ct. 325</u>, <u>81 L.Ed. 593</u> (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Reeves v. Sanderson Plumbing Prods., Inc., <u>530 U.S. 133</u>, <u>120 S.Ct. 2097</u>, <u>147 L.Ed.2d 105</u> (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rosenbloom v. Metromedia, <u>403 U.S. 29</u>, <u>91 S.Ct. 1811</u>, <u>29 L.Ed.2d 296</u> (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Turner v. Baylor Richardson Med. Ctr.</u>, <u>476 F.3d 337</u> (5th Cir. 2007). . . . . . . . . 18

<u>United States v. Clayton</u>, <u>643 F.2d 1071</u> (5th Cir. 1981). . . . . . . . . . . . . . . . . . . 19

<u>Warfield v. Alaniz</u>, <u>569 F.3d 1015</u> (9th Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . 3

### Federal Rules and Statutes

None cited

### State Statutes and Codal Authority

La. C.C. art. 2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### State Cases

<u>Doe v. McKesson</u>, 2021-00929 (La. 3/25/22), <u>339 So. 3d 524</u>. . . . . . . . . 11, 13, 14

<u>Johnson v. Purpera</u>, 2020-01175 (La. 5/13/21), <u>320 So. 3d 374</u>. . . . . . . . . . . . . 14

<u>Schaefer v. Lynch</u>, <u>406 So.2d 185</u> (La. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### Other Authority

None cited

# I. REPLY BRIEF

On December 27, 2024, Mr. DeRay McKesson filed Appellee DeRay McKesson's Brief, which is designated Doc. 41. At Doc. 41, at10, Mr. McKesson cites to three issues, whereas, Officer Doe, John Ford, cited four issues on appeal. The first two, to which McKesson did not respond, are as follows:

1. Whether the Trial Court erred in dismissing Black Lives Matter, Network, LLC, when the amended complaint naming the Network had not been filed, no opportunity to amend, there was no dismissal of the party (with or without) and all on the basis a footnote in the Fifth Circuit ruling. Legal error - *de novo* review.

2. Whether the Trial Court applied the correct standard of review to the motion for summary judgment or whether the Trial Court made impermissible credibility determinations and refused to allow favorable inferences to the nonmoving party, where McKesson failed to offer his own affidavit or any of his own deposition testimony in support of his contentions.

McKesson then referenced Officer Doe's 3rd issue as his issues numbered 1 and 2. Officer Doe/John Ford's 3rd issue was -

3. Whether the Trial Court erred in finding Officer Ford failed to offer evidence that 1) McKesson organized the protest; 2) breached his duty to Plaintiff; and 3) that the breach was cause-in-fact of injury. [ROA.1979 and ROA.1165]

Officer Doe cited a 4th issue, which was -

4. Whether the Trial Court erred in relying on a dissenting opinion from the SCOTUS to again address and reconsider the 1st Amendment issue that was foreclosed by the Doe 2023 decision of this case, which decision is law-of-the-case.

McKesson recast Officer Doe's 4th issue inviting this Court to take action the Supreme Court opted not to take, writing Document 41, at 10:

3. Whether the District Court correctly recognized that the Supreme

Court's First Amendment jurisprudence, including <u>Counterman v. Colorado</u>, <u>600 US. 66</u> (2023), which-post-dated this Court's most recent opinion, entitled Mckesson to summary judgment.

McKesson is asking this Court to reconsider its prior rulings in this case on the basis of <u>Counterman</u>. In fact, in his statement of the case, Document 41, at 10-11, Mr. McKesson frames the argument as though this case is starting over by arguing that Officer Doe failed to state a cause of action against Mr. McKesson. Both this Court, on two occasions, and the Louisiana Supreme Court, on one occasion, found that a cause of action was stated. These rulings are binding on the parties to this case and not subject to reconsideration through the instant appeal.

At Document 41, at 11, McKesson begins to hint that he intends to paint himself as a mere out-of-state participant in the Alton Sterling Baton Rouge protest rather than the nationally known leader and face of Black Lives Matter that he was at the pinnacle of his notoriety in the BLM movement sweeping the country with riots, looting, property damage, and pillage leading to the deaths of multiple police officer including some of the six (6) shot in Baton Rouge and twelve (12) in Dallas.

At Document 41, at 12, Mr. McKesson wrote that Officer Doe, John Ford, violated the local and federal evidentiary rules, by relying upon evidence that could not be admissible - even at trial. Officer Doe, John Ford, meticulously went through nearly 40 exhibits many of which were directly taken from the protest turned riot in Baton Rouge, McKesson's own quotes, McKesson's statements, McKesson's deposition and discovery responses, photographs, video, and/or the deposition of John Ford. In the original brief to this Court, and even though the Trial Court failed

to list one exhibit that it ruled inadmissible or that it would not consider, John Ford went through each and every exhibit and showed why it was admissible or would be admissible at trial.  There was no specific evidentiary ruling and no party assigned error to the lack of any specific evidentiary ruling.  Asking this Court to now rule on the admissibility of evidence is beyond this appeal.[1]

At Document 41, at 12, Mr. McKesson quoted from the Trial Court and wrote that "'Plaintiff's original allegations regarding Mckesson's leadership' . . . were not

---

[1]  McKesson waived his right to raise issues on appeal when he failed to notice a cross appeal.  Art Midwest Inc. v. Atl. Ltd. P'ship XII, 742 F.3d 206, 211 (5th Cir. 2014) ( "[T]his circuit follows the general rule that, in the absence of a cross-appeal, an appellate court has no jurisdiction to modify a judgment so as to enlarge the rights of the appellee or diminish the rights of the appellant." Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 250 (5th Cir.2010) (alteration in original) (quoting Borrego Springs Bank, N.A. v. Skuna River Lumber, L.L.C. (In re Skuna River Lumber, L.L.C.), 564 F.3d 353, 356 (5th Cir.2009)); see Greenlaw v. United States, 554 U.S. 237, 244–45, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ("This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee.").  Even a "party who prevails in the district court is permitted to conditionally raise issues in a cross-appeal because if the appellate court decides to vacate or modify the trial court's judgment, the judgment may become adverse to the cross-appellant's interest." Cook v. Rockwell Int'l Corp., 618 F.3d 1127, 1153 (10th Cir.2010); see Council 31, Am. Fed'n of State, Cnty. & Mun. Employees, AFL–CIO v. Ward, 978 F.2d 373, 380 (7th Cir.1992) ("This court ... together with most of the other circuits, treats conditional cross-appeals differently from unconditional appeals.  Nominally prevailing parties are entitled to file such cross-appeals against the contingency that this court will reverse an otherwise thoroughly satisfactory judgment."); Warfield v. Alaniz, 569 F.3d 1015, 1019 n. 3 (9th Cir.2009) ("A protective cross-appeal is permissible once an initial appeal is filed, raising the possibility of reversal.").  This "inveterate and certain" cross-appeal rule, Morley Constr. Co. v. Md. Cas. Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593 (1937), is "meant to protect institutional interests in the orderly functioning of the judicial system, by putting opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not." El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 481–82, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999).").

substantiated." There was never a dispute between the parties as to whether McKesson was a leader of BLM or that McKesson <u>was</u> nationally known as *the face of BLM*. In briefing to the District Court, in his opposition to the summary judgment, at § III, (C) [<u>ROA.1585-1586</u>] under the headings "The duty was breached" [<u>ROA.1585</u>] and "McKesson was a well known distinguished leader of BLM," [<u>ROA.1588-1589</u>] Officer Doe, John Ford, provided not only the backdrop through §§(A) and (B), but in (C), Officer Doe/John Ford provided multiple citation and quotations taken from four exhibits many of which citations were directed to McKesson's deposition testimony showing he was the leader of the movement and the nationally known face of BLM. <u>ROA.1585-1589</u>.

It is now too late to make an issue of that fact.

At Document 41, at 12-13, McKesson wrote there was no evidence that McKesson arranged for protesters to meet in front of the police station, and block entry to the station and access to the adjacent streets. In fact, there is - there is lots of evidence that McKesson organized the protest, was in charge, was the leader, was acting as the leader, leading others, and giving orders to protestors. Officer Doe offered evidence that McKesson threw a water bottle during the protest. See § III, (F) and (G). <u>ROA.1600-1606</u>.

McKesson admitted he sent out the tweet discussing the Baton Rouge protest and that he went directly to Baton Rouge. McKesson admitted that he was not invited to come to Baton Rouge. At set forth in the original brief, McKesson admitted he tweeted the time and place of the protest, gathered at the exact correct place.

Additionally, he met with the leaders of the Black Panthers and he then lead protesters into the street and was seen and heard ordering protesters in the street and he was leading the protestors to the I-12 Hwy overpass, at the same time that McKesson was turned around from gaining access to I-12 and was marching back up Airline Hwy baiting his arrest for blocking a public highway - at the same time - Officer Doe was injured while making arrests of protestors on Airline Hwy for blocking a public highway. In briefing to the District Court, in his opposition to the summary judgment, ROA. 1583, at § III, (D) and (E) [ROA.1588-1600] under the headings "The duty was breached" and "McKesson organized and led the protest," [ROA.1588-1600]; "McKesson ordered protestors on to the highway," [ROA.1591-1600] and "McKesson leading protestor to and from I-12 when arrest occurred and Officer Doe injured," respectively, Officer Doe, John Ford, provided not only the backdrop through §§(A) (B) and (C), but in (D) (E) and (G) he provided multiple citations to at least seventeen separate exhibits many of which citations and quotations were taken directly from McKesson, McKesson's discovery responses, McKesson's live stream, photos, and/or John Ford's deposition testimony.

At Document 41, at 13 and at 47-49, McKesson wrote that this Court should reconsider its opinion in light of Counterman v. Colorado,[2] and wrote "which 'made

_____

[2] Counterman v. Colorado, 600 U.S. 66 (2023)(recklessness is the appropriate *mens rea*, consistent with the First Amendment, for a criminal conviction for communications constituting a true threat.).

clear that the First Amendment bars the use[3] of 'an objective standard'[4] like negligence'[5] - the only claim remaining here - 'when it comes to [criminally] punishing speech.'" Here, this Court and the Louisiana Supreme Court have found this case - to be neither a criminal case nor one involving First Amendment protected speech: it is a state law negligence case. McKesson fails to prove any legal basis to apply a criminal standard to a Louisiana state law negligence case (knew or should have known) under Louisiana law. This Court specifically found the Louisiana duty risk analysis applies which is a pure negligence standard.[6]

The <u>Counterman</u> case[7] was not about negligent conduct.

<u>Counterman</u> adjudicated the *mens rea* standard necessary for a criminal

---

[3] The actual quote offered by McKesson appears to be taken from he Sotomeyer dissent, "The Court has 'made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity or must have entertained serious doubts as to the truth.' <u>Harte-Hanks Communications, Inc. v. Connaughton</u>, <u>491 U.S. 657, 667</u>, <u>109 S.Ct. 2678</u>, <u>105 L.Ed.2d 562</u> (1989) (internal quotation marks and ellipsis omitted). This makes sense. Allowing liability for awareness of a small chance that a story may be false would undermine the very shield Sullivan erects." <u>Counterman</u>, <u>600 U.S. at 102</u>.

[4] Of the objective standard, the Court wrote, "But the ban on an objective standard remains the same, lest true-threats prosecutions chill too much protected, non-threatening expression." <u>Counterman</u>, <u>600 U.S. at 78</u>.

[5] Of negligence in nt 5, the Court explained, "('Having liability turn on whether a reasonable person regards the communication as a threat—regardless of what the defendant thinks—reduces culpability ... to negligence' (internal quotation marks omitted))." <u>Counterman</u>, <u>600 U.S. at 79</u>.

[6] <u>Doe</u> 2019, <u>945 F.3d at 826</u> and <u>Doe</u> 2023, <u>71 F.4th at 288</u> (citing La. C.C. art. 2315 and duty/risk analysis).

[7] <u>Counterman v. Colorado</u>, <u>600 U.S. 66, 79</u>, <u>143 S. Ct. 2106, 2117</u>, <u>216 L. Ed. 2d 775</u> (2023).

conviction under a Colorado criminal statute, which standard the majority found to be "recklessness." The Court's only discussion of the negligence standard is found in note 5, where, the Court, after going through the three (3) basic choices of *mens rea* in the criminal arena of 1) "consciously desires," 2) "acts knowingly," and 3) "acts recklessly" referenced "negligence" in a footnote to academically round-out the discussion of *mens rea*. The negligence dicta was footnoted, as follows:

> Just to complete the *mens rea* hierarchy, the last level is negligence—but that is an objective standard, of the kind we have just rejected. A person acts negligently if he is not but should be aware of a substantial risk—here, that others will understand his words as threats. See <u>Borden</u>, 593 U. S., at ——, 141 S.Ct., at 1823–1824[8] (plurality opinion). That makes liability depend not on what the speaker thinks, but instead on what a reasonable person would think about whether his statements are threatening in nature. See <u>Elonis</u>, <u>575 U.S. at 738</u>, <u>135 S.Ct. 2001</u>[9] ("Having liability turn on whether a reasonable person regards the communication as a threat—regardless of what the defendant thinks—reduces culpability ... to negligence" (internal quotation marks omitted)).[10]

At Document 41, at 14, after arguing that the District Court got it right when it found that McKesson was not a leader, McKesson admitted that Officer Doe/John Ford proved McKesson was a leader of BLM akin to a civil rights leader or leader of the Tea Party.

At Document 41, at 14, and at 30-43, McKesson wrote liability attaches to him

---

[8] Referencing, <u>Borden v. United States</u>, <u>593 U.S. 420</u>, <u>141 S. Ct. 1817</u>, <u>210 L. Ed. 2d 63</u> (2021).

[9] Referencing, <u>Elonis v. United States</u>, <u>575 U.S. 723, 733</u>, <u>135 S.Ct. 2001</u>, <u>192 L.Ed.2d 1</u> (2015).

[10] The Honorable Sonia Sotomeyer did not discuss the negligence standard of conduct in her dissenting opinion.

once Officer Doe/John Ford show he was a BLM leader who planned, organized and arranged the Baton Rouge protest. McKesson points to no other person that attended the Alton Sterling Baton Rouge protest, who got all the credit for the protest - except him. He is the person of whom Officer Doe testified the officers were warned in advance, he tweeted the location and time, he showed up at the location on time, he met with Black Panthers, he led the protestors, he staged his own arrest, he is the one who jumped out the next morning in the press taking credit, he is the one that filed a class action lawsuit in the middle district as the class representative of the Baton Rouge protestors. Now, he, McKesson, seeks to distance himself from the protest when he is called upon to be held responsible for his wrongs by representing with paper arguments - not with evidence - that he was simply in the wrong place at the wrong time. He, McKesson, an admitted leader of BLM, has offered no alternative explanation as to why he was directing BLM protestors to block traffic and leading protestors on a march to Hwy I-12 on Airline Highway to block I-12, if he did not see himself as the BLM protest leader.

At Document 41, at 14, Mr. McKesson wrote that the "District Court highlighted [evidence], inadmissible." The District Court did not "highlight" any of Officer Doe's evidence as inadmissible or as excluded. There is no indication the District Court did not consider any evidence or, if so, the District Court left no evidentiary ruling to be reviewed. Here, there was no specific ruling on the admissibility of any specific exhibit to be challenged on appeal. Mr. McKesson states that his "past acts" [*of leading other violent protests*] will be inadmissible at trial - too

highly prejudicial - when in fact those "past acts" show his habits and a pattern of violent conduct to satisfy the knew or should have known negligence standard. In the alternative, Mr. McKesson argues, his "past acts" are "plainly irrelevant."[11] The decision of the District Court does impress that it will not allow any evidence of knew or should have known to be demonstrated through McKesson's past acts, the past acts and history of McKesson as a leader of BLM and the prior violence in the BLM protests. The District Court does intimate that such showings are not relevant to this case to meet the standard of knew or should have known through knowledge, opportunity, habit and pattern. The Wolfe Blitzer interview is one such piece of evidence that demonstrates McKesson was using the violence to underwrite his power and authority.

At Document 41, at 15, Mr. McKesson incorrectly wrote, "Ford also leans heavily on his complaint's allegation, incorrectly referring to them as facts." McKesson cited to Appellant's brief at 3-4, where Officer Doe/John Ford wrote under the section entitled, "Pertinent Facts," that "The facts of this case have been recited in opinions of this Court of which writs have now been denied." The writing that follows is opened by quotation marks signaling a quote. Where the quotation marks close is foot note 8, which cites to this Court's opinion in <u>Doe</u> 2023, <u>71 F.4th at 281</u>–82, written by the Chief Judge as a description of the allegations of fact found in the complaint. McKesson argues that the facts found in the complaint need not be

---

[11]  FRE 404(b)(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

accepted as law of the case on summary judgment, which is an argument never advanced by Officer Doe/John Ford.  Mr. McKesson then agrees to set aside "those issues" - how the allegations of fact found in the complaint may be summarized.

At Document 41, at 15, Mr. McKesson then argues that McKesson was "simply" a "well-known activist who attends a protest."  He then argues that simply attending a protest *without more* "cannot open a person up to protest-leader liability." Mr. McKesson then concludes that protestors who simply flew in, showed-up at the Alton Sterling Baton Rouge protest and were doing nothing more than "walking around with a group" have no duty to Officer Doe/John Ford.  McKesson's own live stream shows him intentionally violating the law and baiting his own arrest - he was not simply walking around not bothering anyone.  At the time of his arrest, there was a police car just behind and following McKesson - why?  The reason is once police were able to turn McKesson around on Airline Highway, where he had been leading a march of protestors to I-12, he was at the end of the march - in the back. He went from leading to following, from the front to the back.  This case is about and the evidence in the record is that McKesson showed up as a leader as distinguished from a participant.   As a leader, there was a duty. ROA.1585.  The duty question was answered by the Louisiana Supreme Court and this Fifth Circuit, Doe 2023, 71 F.4th at 288:

> The parties disputed whether Louisiana law recognizes a duty in these circumstances. In the course of that dispute, we understood the duty at issue as follows: "a duty not to negligently precipitate the crime of a

third party." *Mckesson*, <u>945 F.3d at 827</u>.[12] The existence of a legal duty is a question of state law, and the Supreme Court of Louisiana expressly concluded that such a duty exists in the circumstances presented here. *Mckesson*, <u>339 So. 3d at 533</u>. The threshold question having been answered, the only remaining issue is whether Doe has plausibly stated this form of a negligence claim. As before, we conclude that he has. Doe has plainly alleged that he suffered an injury.

As a leader, Mr. McKesson may no longer disputing that he owed a duty. Mr. McKesson is arguing, on appeal, that there was no proof offered he was the leader and, in fact, he just showed up and was following the crowd.[13] Officer Doe/John Ford also addressed the breach of duty in the opposition he submitted to the summary judgment, §§ 4 and 5 entitled, respectively, "Conduct in question was cause in fact" and "The risk of harm was within the scope of the duty." <u>ROA.1606-1609</u>.

At Document 41, at 16, McKesson argues his conduct was not the cause in fact. This argument was addressed in the opposition he submitted to the summary judgment, §§ 4 and 5 entitled, respectively, "Conduct in question was cause in fact" and "The risk of harm was within the scope of the duty." <u>ROA.1606-1609</u>

At Document 41, at 16, McKesson then states that <u>Counterman</u> - a case about applying the 1st Amendment to criminal convictions - compels "affirmance of the judgment below." How? How could a case about applying the 1st Amendment to a criminal conviction under Colorado law apply to a civil case under Louisiana law

---

[12] Referencing, <u>Doe v. Mckesson</u>, <u>945 F.3d 818, 826</u> (5th Cir. 2019), <u>cert. granted, judgment vacated</u>, <u>592 U.S. 1</u>, <u>141 S. Ct. 48</u>, <u>208 L. Ed. 2d 158</u> (2020).

[13] This representation is readily belied by his reputation, past history, his own livestreaming of his arrest, his personal statements made post protest/riot to the press, and the class action lawsuit he filed.

where the courts have found the 1st Amendment protections do not apply.

At Document 41, at 18, McKesson cites law about excluding evidence. Here, there are no evidentiary rulings by the District Court to review. There was no error assigned to any evidentiary ruling and McKesson did not cross appeal arguing that any exhibit should have been excluded. McKesson's repeated requests of this Court to exclude evidence is not an issue ripe for appeal.

At Document 41, at 18-19, McKesson states that liability may be visited only upon the leader of the protest.

At Document 41, at 19, McKesson wrote that Officer Doe/John Ford must meet the duty risk analysis under state law to "avoid chilling First Amendment protected activity." McKesson makes the *nonsequitur* argument that if the facts and evidence do not meet the Louisiana duty/risk analysis, the case is then barred by the 1st Amendment. McKesson erroneously cites <u>Doe</u> 2023, <u>71 F.4th at 288</u>,[14] wherein nowhere does this Court link the duty-risk analysis to the First Amendment.[15]

At Document 41, at 19-21, while conceding that as the leader, he may be held liable, McKesson discusses the rationale as to why a participant at a protest may not be held liable under the facts of this case.

---

[14] <u>Doe v. Mckesson</u>, <u>71 F.4th 278</u> (5th Cir. 2023), <u>cert. denied</u>, <u>144 S. Ct. 913</u>, <u>218 L. Ed. 2d 442</u> (2024).

[15] "We also rejected Mckesson's argument that the First Amendment forbids a State from imposing liability in these circumstances. Here, the negligence theory of which Doe seeks to avail himself is tailored to prohibiting unlawful conduct and does not restrict otherwise legitimate expressive activity. One of our colleagues dissented from this holding." <u>Doe</u> 2023, <u>71 F.4th at 282</u>.

At Document 41, at 21-22, McKesson explores the rationale of this Court in its prior decisions holding that under the facts pled in this case, McKesson may be held liable. At note 2, McKesson suggests that an issue remains in this case that the courts in this case have yet to address. McKesson suggests that the issue remains as to whether Office Doe/John Ford's status as "public figure" offers immunity to McKesson, when, in fact, the issue was raised in a dissenting opinion in the first McKesson decision. Following McKesson's first writ application, the United States Supreme Court remanded this case to this Court.[16] This Court promptly nipped that question in-the-bud by certifying the following questions[17] to the Louisiana Supreme Court:

> 1.    Whether Louisiana law recognizes a duty, under the facts alleged in the complaint, or otherwise, not to negligently precipitate the crime of a third party?

> 2.    **Assuming McKesson could otherwise be held liable for a breach of duty owed to Officer Doe, whether Louisiana's Professional Rescuer's Doctrine bars recovery under the facts alleged in the complaint**?[18]

After the Louisiana Supreme Court responded[19] answering "yes" to the first and

---

[16]  Mckesson v. Doe, 592 U.S. 1, 141 S. Ct. 48, 208 L.Ed.2d 158 (2020).

[17]  Doe v. Mckesson, 2 F.4th 502, 504 (5th Cir.), certified question accepted, 2021-00929 (La. 7/8/21), 320 So. 3d 416, and certified question answered, 2021-00929 (La. 3/25/22), 339 So. 3d 524.

[18]  There is no other immunity that could possibly apply to this negligence case. There is no statutory immunity for cases brought by police officers injured in the line of duty in a negligence case.

[19]  Doe v. Mckesson, 339 So. 3d 524 (La. 2022).

"no," to the second of the certified questions,[20] this Court acknowledged same writing, "With that essential confirmation, the case returns to us. We now renew our prior holdings."[21] Thus, there is no immunity under the professional rescuer doctrine.

The "public figure" status issue has been applied in defamation cases - this is not a defamation case. In note 2, in support of its new theory of immunity, McKesson cited specifically to <u>Johnson v. Purpera</u>, 2020-01175 (La. 5/13/21), <u>320 So. 3d 374, 389</u>–90, which addressed:

> The error occurred because, as discussed supra, the question of whether plaintiff **is a public official or a public figure** is a question of law for the court to resolve. The question should not have been relinquished to a future jury. Furthermore, while the question of plaintiff's status as a private individual or public official is a legal one this court can reach, it is not necessary for us to do so in this instance because **defamation by innuendo is only available when**, as noted above, statements regard a private individual and private affairs. <u>Schaefer</u>, <u>406 So.2d at 188</u>.[22] Here, the audits address the administration and operations of a public agency, HEAL. [Emphasis added]

The link between the rationale of a defamation case and this case is not an easy "cold shut." At note 2, McKesson further advances the defamation analogy to argue that "one's role as a protest leader is a fact that would require clear and convincing evidence - 'a difficult burden' to meet as for a determination of actual malice in a defamation case." The case support McKesson cited addressed an OB surgeon who sued a newspaper which accused the doctor in the press of butchering women through

---

[20] <u>Doe v. Mckesson</u>, 2021-00929 (La. 3/25/22), <u>339 So. 3d 524</u>.

[21] <u>Doe</u> 2023, <u>71 F.4th at 282</u>, referencing, <u>Doe</u> 2019, <u>945 F.3d at 826</u>, explaining liability under Louisiana law.

[22] <u>Schaefer v. Lynch</u>, <u>406 So.2d 185, 188</u> (La. 1981).

14

a high C-section rate. Whether the clear and convincing standard was applied to that case is unclear; however, J. Dennis, through his concurrence, referenced the clear and convincing standard.[23] In his concurrence, J. Dennis wrote that clear and convincing should apply in a case involving a newspaper and a matter of public importance, writing:

> The newspaper article at issue in this case concerns the medical treatment of women in this country and, in particular, in this state. This topic is clearly a matter of great public concern and interest. I believe that our state constitution incorporates the standard articulated by a plurality of the U.S. Supreme Court in <u>Rosenbloom v. Metromedia</u>, <u>403 U.S. 29</u>, <u>91 S.Ct. 1811</u>, <u>29 L.Ed.2d 296</u> (1971), <u>overruled sub silentio</u> by <u>Gertz v. Robert Welch, Inc.</u>, <u>418 U.S. 323</u>, <u>94 S.Ct. 2997</u>, <u>41 L.Ed.2d 789</u> (1974), which applies the New York Times **actual malice test to speech of public concern regardless of the status of the plaintiff.** See <u>Sassone</u>,[24] <u>supra</u> at 356 (concurring opinion). Consequently, the plaintiffs here must produce evidence to demonstrate the likelihood that they will be able to show by clear and convincing evidence that the **article was published with knowing and reckless disregard of its falsity**. Id. (concurring opinion); <u>Mashburn</u>, <u>supra</u> at 890 (La.1977). Because I do not find that the plaintiffs have met that burden here, I agree that summary judgment in favor of the defendants is appropriate. [Emphasis added]

Actual malice is not a showing required for a Louisiana negligence claim.

Having now drifted far afield from the facts and law governing this case, McKesson sums up the slander/libel analogy with "no reasonable fact finder could conclude that the record here suffices to substantiate that Mckesson organized or led the Baton Rouge protest." Document 41, nt. 2, at 22. To the contrary, in his

---

[23] <u>Romero v. Thomson Newspapers (Wisconsin), Inc.</u>, 94-1105 (La. 1/17/95), <u>648 So. 2d 866, 871</u>–72.

[24] Referencing, <u>Sassone v. Elder</u>, <u>626 So.2d 345, 351</u> (La. 1993).

opposition brief, Officer Doe/John Ford briefed under III (A)(B)(C)(D)(E)(F)(G) [ROA.1583-1609] "The duty was breached," "McKesson participated in hundreds of protest in City Streets;" "McKesson aware that prior BLM protest were violent;" "McKesson was a well known distinguished leader of BLM;" "McKesson organized and led the protest;" "McKesson ordered protestors on to the highway;" "McKesson threw a water bottle;" and "McKesson leading protestors to and from I-12 when arrest occurred and Officer Doe injured," citing twenty-five (25) or more exhibits including extensive quotes from McKesson in both print and deposition, deposition testimony of Officer Doe, McKesson Interrogatory responses, McKesson live stream video, photographs, articles and on and on and on showing proving McKesson, as is his pattern and habit, planned, orchestrated, led and took credit for the Baton Rouge Alton Sterling protest including the articles that were published after the protest wherein McKesson took all the credit along with citation to the federal class action lawsuit led by McKesson as a class representative of the protestors at the Baton Rouge protest. Despite these offerings, McKesson wrote, Document 41, at 22, that Officer Doe/John Ford occasionally cited to 1) the record, 2) his opposition brief [littered with citations to evidence]; 3) the District Court opinion; 4) "nothing at all" 5) full ranges of pages (note 3) providing multiple quotations and citation to testimony, interrogatory responses and other evidence. The standard on appeal is *de novo* review of the record, which is the reason Officer Doe/John Ford cited to the record over and over and over again. Once this Court reviews the record on the summary judgment in this matter, this Court should reverse and remand.

At Document 41, at 23-24, with the inclusion of note 4, McKesson admits to his "general leadership in a social and political protest. . ." Once again, McKesson injects policy arguments as a reason to reject allowing the cause of action in this case to proceed, which argument is now off the table. Having *unsuccessfully* advanced <u>Claiborne</u> arguments before this Court, the Louisiana Supreme Court and the U.S. Supreme Court, McKesson *continues, through this appeal*, to challenge the prior rulings in this case by this Court and the Louisiana Supreme Court, which rulings are all now *permanently binding* on the District Court and on the parties to this case.

At Document 41, at 25, McKesson again attacks the evidence offered by Officer Doe/John Ford where the lower court offered no ruling on any specific piece of evidence to be reviewed by this Court. Neither the District Court nor McKesson explain why any piece of the evidence offered on summary judgment may not be offered and admitted into evidence at trial. The admissibility of any piece of evidence was not taken up on appeal.

At Document 41, at 25, nt 5, McKesson argues that not one exhibit offered on summary judgment was offered in discovery.[25] In the original brief offered to this Court, Officer Doe/John Ford addressed the dicta in the District Court and went through each exhibit and referenced its prior use in the litigation. The only item not previously offered was the affidavit of one witness, who was not previously listed,

---

[25] Nearly every article offered contains quotes from McKesson who has given multiple interviews to the press, news stations, on tv shows, pod casts, article, newspapers as the leader of BLM. McKesson was questioned from nearly every article during his deposition. Impeachment evidence need not be listed in discovery responses.

but who may now be listed in a discovery update. To raise an issue outside of the instant appeal, McKesson should have filed a cross appeal - but, he did not .

At Document 41, at 26, McKesson argues that the District Court properly acted in weighing the evidence. McKesson admitted that the District Court found that the evidence supports a finding that "Mckesson 'may have encouraged some protesters into the road at some point during the protest,' but that encouragement was *legally insufficient* 'to hold him liable in negligence for Plaintiff's injuries.'" The District Court erred in weighing evidence ("legally insufficient," "falls short;" and "minor role") where, "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes, 398 U.S., at 158–159, 90 S.Ct., at 1608–1609.[26]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). This Court has echoed this legal requirement and standard on summary judgment in published opinions as recent as December 2024;[27]

---

[26] Referencing, Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

[27] "'When assessing whether a dispute to any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence.' Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007)." Hall v. UiPath, Inc., 123 F.4th 419, 422 (5th Cir. 2024); Hankins v. Wheeler, 109 F.4th 839, 844 (5th Cir. 2024).

October 2024;[28] and August 2024. McKesson concludes that the District Court was *legally correct*, when, as shown above, *weighing evidence* is *legally incorrect*.

At Document 41, at 27, McKesson argues that photographs taken during the protest/riot, which Officer Ford attended may not be authenticated at trial by Officer Ford or any of his officer witnesses, who worked the protest/riot and who are in the photos and video and who were there. "A photograph can be authenticated by someone other than the photographer 'if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it.'"[29] The newspaper, magazine and other publicized articles contain quotes from McKesson giving interviews and he admitted to most quotes during his deposition. If McKesson is present in court and asked about the articles a foundation may be laid for admissibility particularly where he his testimony is inconsistent with his prior deposition testimony. Some of the articles were taken from videos of McKesson giving interviews , e.g. Wolfe Blitzer. The articles display knew or should have known through the pattern, practice and habits of McKesson taking charge and leading other BLM violent destructive protests and some for days and weeks and they are relevant to his actions in Baton Rouge - Baton Rouge was not his *first rodeo*. The

---

[28] "'In reviewing the record, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.' Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)." Ibanez v. Texas A&M Univ. Kingsville, 118 F.4th 677, 682 (5th Cir. 2024).

[29] United States v. Winters, 530 F. App'x 390, 395 (5th Cir. 2013), quoting, United States v. Clayton, 643 F.2d 1071, 1074 (5th Cir. Unit B 1981).

District Court's myopic view of the evidence, hinting that it intends to exclude the drone videos and photos taken during the riot on the basis that they do not specifically depict McKesson, along with the District Court's characterization of the evidence as "problematic," do not render the videos or photos inadmissible on either summary judgment or at trial. The drone videos give the overview of what the officers were facing. The photos show actual objects being thrown at the officers. Google maps help to show the lay out of the police headquarters on Airline Hwy, Airline Hwy leading to I -12 and the large public park (Independence Park) - just a country block away - that could have been used to stage the protest. See Document 41, at 28. At Document 41, at 29, McKesson admits that the District Court exercised discretion and reviewed all of the evidence and did not exclude any specific item on summary judgment. As such, there is no evidentiary ruling for this Court to review. McKesson did not take an appeal on the evidentiary rulings.

At Document 41, at 29, McKesson argues that this Court prior ruling as to whether a cause of action has been stated against him is not "law of the case." This Court's prior decision regarding the sufficiency of those allegations, are "law of the case." In fact, they are - this Court's prior decisions that Officer Doe/John Ford has alleged a cause of action against McKesson is law of the case. McKesson cited to Musacchio v. United States, 577 U.S. 237, 245, 136 S. Ct. 709, 716, 193 L. Ed. 2d 639 (2016), where the Court held:

> When an appellate court reviews a matter on which a party failed to object below, its review may well be constrained by other doctrines such as waiver, forfeiture, and estoppel, as well as by the type of challenge that it is evaluating. **But it is not bound by district court rulings**

**under the law-of-the-case doctrine.** That doctrine does not bear on how to assess a sufficiency challenge when a jury convicts a defendant after being instructed—without an objection by the Government—on all charged elements of a crime plus an additional element. [Emphasis added]

Here, Officer Doe/John Ford has not asserted that the District Court's ruling are law of the case.

McKesson then argues that whether or not Officer Doe/John Ford may prove his allegation is not law of the case - which was never an argument advanced by Officer Doe/John Ford.

At Document 41, at 45, McKesson argues that Officer Doe/John Ford did not explain how McKesson, rather than any other protest attendee, was the cause of his injuries. In his opposition brief, Officer Doe/John Ford devoted an entire section under § 4 and 5 to "Conduct in question was cause in fact" and "The risk of harm was within the scope fo the duty." ROA.1606-1609.

<div align="center">CONCLUSION</div>

This Court should reverse and remand.

<div style="margin-left:40%">
Respectfully submitted:
Counsel for Appellant
JOHN FORD
/sDonna Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
Dgrodner@grodnerlaw.com
</div>

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing in electronic portable document format has been both emailed pursuant to Rule 25.2.3 and 25.2.5 on the Court's electronic Notice of Docketing Activity this January 27, 2025.

/sDonna U. Grodner
Donna U. Grodner

Counsel for DeRay McKesson,
William P. Gibbens
Schonekas, Evans, McGoey & McEachin, LLC
909 Poydras Street, Ste 1600
New Orleans, La 70112
504.680.6050 fax 504.680.6041 billy@semmlaw.com

Counsel for Black Lives Matter Network, Inc.
Chloe M. Chetta cchetta@barrassousdin.com
Barraso Usdin Kupperman, Freeman & Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, La 70112
504.589.9731 fax 504.589.9701

# FORM 6: CERTIFICATE OF COMPLIANCE WITH RULE 32 (a)

1.  This brief complies with the type-volume limitation of Fed.R. App. P. 32 (a)(7)(B) because this brief contains 6,416 words excluding the parts of the brief exempted by Fed. R. App. 32 (f) of 6,500 words or 650 lines of text.

2.  This brief complies with the typeface requirement of Fed.R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in proportionally spaced typeface using Word Perfect in a scaleable 14 pt. font called Times New Roman.

    Baton Rouge, Louisiana, on January 27, 2025.

                                        /sDonna Grodner
                                        Donna U. Grodner